500 A.2d 832

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Darlene Alice MEHMETI.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1984.

Filed Oct. 11, 1985.

Reargument Denied Dec. 5, 1985.

David Christine, Assistant District Attorney, Strouds-burg, for Com., appellant.

Marc R. Wolfe, Stroudsburg, for appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, CIRILLO, BECK, POPOVICH and HESTER, JJ.

BROSKY, Judge:

This appeal is from the pre-trial suppression of certain statements. Appellant, the Commonwealth, contends that the fact that the witnesses were put under hypnosis should not render inadmissible their pre-hypnotic statements. We agree and, subject to the strictures hereinafter detailed, reverse the suppression and remand for trial.

An auxiliary issue is the method to be applied by the courts in determining whether a suppression order substantially handicaps or terminates the prosecution and is, therefore, interlocutorily appealable. See *Commonwealth v. Lapia,* 311 Pa.Super. 264, 457 A.2d 877 (1983). The Pennsylvania Supreme Court has, since *Lapia,* made suppression orders appealable on the bare allegation of the District Attorney that the prosecution is substantially handicapped. Thus, that auxiliary issue is no longer before us.[1]

Having established that the instant suppression order is appealable, the next question is whether the testimony of the hypnotized witnesses was properly suppressed.

\* \* \* \* \* \*

The facts and procedural history of this case are as follows:

On September 22, 1981, appellee, Darlene Alice Mehmeti, was bound for court on charges of Criminal Homicide[2], Crimes Committed With Firearms[3], Aggravated Assault[4] and Recklessly Endangering Another Person[5]. Pursuant to appellee's supplemental omnibus pre-trial motion to suppress, *inter alia,* the complete testimony of four prosecution witnesses whose memories were hypnotically-refreshed, the Court of Common Pleas of Monroe County

1. In *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), it was stated: "That we directed, in the clearest fashion, that the Superior Court is required to hear a Commonwealth appeal from a suppression hearing, and gave definitive reasons why, cannot be doubted."

2. Crimes Code, Dec. 6, 1972, § 1, 18 C.P.S.A. § 2501.

3. Crimes Code, Dec. 6, 1972, § 1, 18 C.P.S.A. § 6103.

4. Crimes Code, Dec. 6, 1972, § 1, 18 C.P.S.A. § 2702.

5. Crimes Code, Dec. 6, 1972, § 1, 18 C.P.S.A. § 2705.

conducted a pre-trial hearing on December 21, 1981. Following the testimony of two investigating officers and the hypnotist, the lower court, in two separate Orders of Court, dated January 26, 1982 and February 4, 1982, deemed the complete testimony of prosecution witnesses, Rosemary Kessler, Scott James Kessler, Linda Landis, and Stephen J. Landis, inadmissible for trial due to their earlier submission to hypnosis. Appellant/Commonwealth filed this appeal from the aforementioned Orders.[6]

The relevant facts surfaced at the preliminary hearing conducted on September 22, 1981. Stephen J. Landis and his wife, Linda, of Telford, Pennsylvania, were driving northerly on Route 209 on August 6, 1981. As they passed Dutchman's Gas Station in East Stroudsburg, Monroe County, between 9:00 p.m. and 10:00 p.m., Mr. Landis heard three firecracker-type disturbances originating at the gas station pumps; Landis turned his head quickly to the pumps and observed the attendant fall to the ground. He identified no one; however, he detected a "mid-60's", dull-blue Chevrolet Impala parked parallel to both the pumps and highway. Mrs. Landis observed nothing.

Suspecting the mere romp of adolescents, Mr. and Mrs. Landis continued their journey to Dingman's Falls. The next morning, they first learned of the death of George Coco, the Dutchman's gas station attendant.

Prosecution witness, Scott James Kessler, and his wife, Rosemary, resided in East Stroudsburg, some 200 yards from Dutchman's Gas Station, at the time of George Coco's death. At approximately 9:40 p.m. on August 6, 1981, Mr. and Mrs. Kessler purchased gasoline at Dutchman's, chatted briefly with the victim and drove home. A few minutes after arriving home, while lifting barbells on his front porch, Mr. Kessler heard several, firecracker-type sounds emanating from Dutchman's. From a better vantage point

6. The Orders of January 26, 1982 and February 4, 1982 denied suppression of a 1966 blue Chevrolet and hand-written Bill of Sale. They further denied appellee's motion to quash the complaint. They did, however, suppress an undated letter written by appellee to her husband. These portions of the Orders are not at issue here.

at his bedroom window, Kessler perceived a cloud of white smoke hovering above and between the two gas pump islands. He also observed a white Ford pick-up truck driving southbound on Route 209. Although he immediately called the gas station and received no answer, Kessler was not alarmed; he suspected that the victim was playing with firecrackers and was away from the phone while servicing customers. A few moments later, however, he observed the flashing lights of police vehicles and proceeded quickly to the station. Upon arriving at the station a few minutes before 10:00 p.m., Kessler learned that Coco was the victim of multiple gunshot wounds. Following a pathological examination, gunshot wounds to the right hand, neck and back were recorded, and manner of death was labeled homicide.

Officer Thomas Mastrusso, of the Pennsylvania State Police, interviewed the Landises and Kesslers and acquired the information hitherto discussed. These interviews were recorded neither mechanically nor electronically; Officer Mastrusso simply took handwritten notes. In an attempt to freshen their memories and thereby produce additional evidence, investigating officials persuaded the four witnesses to submit to a hypnotic interview.

Hypnotist David Miller, assisted by Officer Mastrusso, hypnotically interviewed Mr. and Mrs. Kessler on August 19, 1981. David Miller, a designer with Patterson-Kelley Company and mayor of East Stroudsburg, was neither a psychiatrist nor psychologist; he simply received informal hypnotic training from Dr. Bernard Gorton, a Philadelphia neurologist. Mr. Miller had placed 30,000 people under hypnosis prior to this incident.

Prior to the session, Officer Mastrusso gave Mr. Miller a synopsis of the Coco slaying and the hypnotic subjects' earlier statements. Once again, only the Officer's handwritten notes were taken of the Kesslers' statements under hypnosis. Mr. and Mrs. Kessler did not add to, delete or revise any portion of their pre-hypnotic statements during the hypnotic session with Miller. In fact, there was some

indication that attempts to hypnotize Mr. Kessler were unsuccessful.

On August 21, 1981, Mr. and Mrs. Landis were hypnotized by Mr. Miller under the identical conditions provided at the Kesslers' interview. Mrs. Landis did not change or expand her earlier statement; Mr. Landis, however, altered his pre-hypnotic statement to the nominal extent of adding his observance of a bar behind the taillight lens of the blue Chevrolet Impala.

In *Commonwealth v. Smoyer*, 505 Pa. 83, 476 A.2d 1304, 1306 (1984), the Pennsylvania Supreme Court ruled on the admissibility of testimony. "Hence, again, we hold that testimony adduced by hypnotism is inadmissible."

█ In the instant case, the testimony of Stephen Landis with regard to the identification of the vehicle—specifically that there was a bar running behind the taillight lens of the vehicle which he had earlier described—is not admissible. It was adduced by hypnosis.

However, the test enunciated by the Supreme Court of Pennsylvania does not invalidate the admission into evidence of all testimony derived from a witness who has undergone hypnosis. The testimony which was not hypnotically adduced is admissible at trial, but under the following guidelines outlined in *Smoyer*, 505 Pa. at 89–90, 476 A.2d at 1308: "[W]henever a person previously hypnotized is offered as a witness, the offering party must so advise the court and show that the testimony to be presented was established and existed previous to any hypnotic process; that the person conducting the hypnotic session must be trained in the process and is neutral of any connection with the issue or the parties; and, the trial judge shall instruct the jury that the testimony of a witness previously hypnotized should be carefully scrutinized and received with caution."

█ In the instant case, the only guideline that posed any threat to the admission of the testimony of Scott and Rosemary Kessler and Linda Landis, and to the portion of

Stephen Landis' testimony that did not deal with the bar running behind the taillight lens, is the guideline which requires that the hypnotist be neutral of any connection with the issues or parties. However, after careful review of the facts in this case, it is clear that David Miller was neutral as required. The only connection he had with the parties occurred when Officer Mastrusso gave Miller a synopsis of the Coco slaying and the hypnotic subjects' earlier statements. This minimal connection is necessary in order to give the hypnotist a basis for his hypnotic session. It does not serve to make the testimony inadmissible.

Orders reversed in part.[7] They are affirmed only to the extent of prohibiting Stephen Landis from testifying concerning the bar behind the taillight lens.

BECK, J., files a concurring opinion.

SPAETH, President Judge, files a concurring and dissenting opinion.

BECK, Judge, concurring:

Except for the ultimate question as to whether the prehypnosis recollections had been preserved, both Judge Brosky and President Judge Spaeth present similar analyses of the issues. Both would conclude that hypnotically-induced testimony is inadmissable. *Commonwealth v. Smoyer*, 505 Pa. 83, 476 A.2d 1304 (1984). Both would conclude, Judge Brosky by implication, that witnesses who were hypnotized are not competent to testify as to their pre-hypnotic recollection except where the pre-hypnotic recollection had been properly preserved. *Commonwealth v. McCabe*, 303 Pa.Super. 245, 449 A.2d 670 (1982). I agree with Judge Brosky's analysis that the prehypnotic recollection has been properly preserved. Accordingly I concur.

7. We think it advisable to emphasize that the defendant will be entitled, pursuant to *Smoyer*, to an instruction that the testimony of the previously hypnotized witnesses should be carefully scrutinized and received with caution.

SPAETH, President Judge, concurring and dissenting:

I believe we should affirm on the basis of the able opinions of the trial court. I add these further comments only because, subsequent to the filing of the trial court opinions, the Supreme Court has again addressed the issue of the admissibility of hypnotically refreshed testimony. *See Commonwealth v. Smoyer,* 505 Pa. 83, 476 A.2d 1304 (1984). I disagree with the majority's conclusion that *Smoyer* requires that we reach a different result than that of the trial court.

The trial court concluded, on the basis of the Supreme Court's opinion in *Commonwealth v. Nazarovitch,* 496 Pa. 97, 436 A.2d 170 (1981), that the testimony of all four witnesses who had been hypnotized should be excluded. It reached this conclusion after a three part analysis. It first asked whether the testimony that was hypnotically-*adduced,* that is, wholly the result of hypnosis, was admissible. It next asked whether the witnesses who had been hypnotized were *competent* to testify as to their pre-hypnosis recollections. It finally asked whether these pre-hypnosis recollections had been *preserved* in a sufficiently reliable way to render them independently admissible. Slip op. of tr. ct. at 4–5.

In answer to its first question, the trial court held that hypnotically-adduced testimony is inadmissible. The majority affirms this holding, and as to this point, I join the majority. *See Commonwealth v. Smoyer, supra; Commonwealth v. Nazarovitch, supra;* Majority at 282–284; Slip op. of tr. ct. at 6.

In answer to its second question, the trial court concluded, after a thorough analysis of the reasoning in *Commonwealth v. Nazarovitch, supra,* and the authorities cited therein, that the four witnesses were not competent to testify as to their pre-hypnotic recollections. In *Nazarovitch,* the Supreme Court addressed the threshhold issue of whether hypnotically-refreshed testimony was competent. It applied the test announced in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), for determining whether evidence

adduced by a particular scientific method is sufficiently reliable to be competent, *i.e.*, it asked whether "the thing from which the deduction is made [is] ... sufficiently established to have gained general acceptance in the particular field in which it belongs." *Id.* at 1014, *cited in Commonwealth v. Nazarovitch, supra*, 496 Pa. at 101, 436 A.2d at 172 (emphasis omitted). In applying this test, the Supreme Court expressed its concern with the conclusion of medical experts, summarized by the New Jersey Supreme Court in *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981), that previously hypnotized witnesses have difficulty in distinguishing between pre- and post-hypnotic recollection:

> "[a] subject often will incorporate into his response his notion of what is expected of him.... Because of the unpredictability of what will influence a subject, it is difficult even for an expert examining a videotape of a hypnotic session to identify possible cues.
>
>      \*    \*    \*    \*    \*    \*
>
> "Perhaps [the] most troubling phenomenon is the tendency to confound memories evoked under hypnosis with prior recall.
>
>      \*    \*    \*    \*    \*    \*
>
> "Typically, a subject is told he will remember what he has recalled under hypnosis after he awakes from the trance. In response to this post-hypnotic suggestion, most subjects will indiscriminately mix their hypnotic recall with their waking memory. Many experts believe that the subject is then unable to evaluate critically the resulting memory to determine what he himself believes is the accurate version... Furthermore he will have a strong subjective confidence in the validity of his new recall, which will make it difficult for an expert or a jury to judge the credibility of his memory. [ (citations and footnotes omitted) ]"

*Id.* at 539, 432 A.2d at 93.

*Cited in Commonwealth v. Nazarovitch, supra*, 496 Pa. at 107–08, 436 A.2d at 176.

On the basis of such considerations, the Supreme Court concluded that "we do not believe that the process of refreshing recollection by hypnosis has gained sufficient acceptance in its field" to meet the *Frye* test of reliability, and it held: "While we do not want to establish a *per se* rule of inadmissibility at this time, we will not permit the introduction of hypnotically-refreshed testimony until we are presented with more conclusive proof than has been offered to date of the reliability" of hypnosis. *Id.*, 496 Pa. at 110–11, 436 A.2d at 177, 178. The trial court relied on this analysis to conclude that here, "[s]ince the Court, the defense and jury cannot discern whether the witness is relating a historically accurate account of events free from the taint of hypnotic suggestion, the more reasoned approach requires that all witnesses who underwent hypnosis as an aid to [the] criminal investigation shall be incompetent to testify at trial regarding the criminal episode." Slip op. of tr. ct. at 8–9.

The question we must decide is whether *Commonwealth v. Smoyer, supra,* requires that we disturb this conclusion. I do not believe it does. In *Smoyer,* the Supreme Court was required to decide whether hypnotically-adduced testimony had been improperly admitted at trial. It concluded that it had been improperly admitted, and in doing so, strongly reaffirmed both the holding in *Nazarovitch* and the policy concerns that underlay that holding:

> In *Commonwealth v. Nazarovitch, supra,* Mr. Chief Justice O'Brien examined at length the scientific state of hypnotism and found it wanting as a source of admissible evidence. Whatever its value in other disciplines, it cannot be relied upon to produce evidence untainted by untraceable factors. It is of no moment that all evidence is ultimately delivered by fallible human agency. Such fallibility is a known quantity, understood and expected in ordinary human experience. It is at least only the fallibility of the witness and not the added dimension of another stirring his psyche, waking who knows what fanciful ghosts.

Hence, again we hold that testimony adduced by hypnotism is inadmissible as evidence. Therefore, the hypnotically adduced testimony herein was improperly admitted. *Id.*, 505 Pa. at 87, 476 A.2d at 1306.

Because the Court concluded that the admission of the testimony had not been harmless error, it remanded for a new trial. At that trial, it noted, the question of whether the witness was incompetent for all purposes was likely to arise. It held that in such a case there might be an exception to the presumption of incompetence, provided the Commonwealth could satisfy certain stringent conditions designed to obviate the concerns expressed in *Nazarovitch.* If the Commonwealth could prove that the session had been conducted by a trained hypnotist, thereby minimizing the danger of suggestiveness, and if it could "show that the testimony ... was established and existed previous to any hypnotic process," then it would be within the discretion of the trial court to admit the testimony. *Id.*, 505 Pa. at 90, 476 A.2d at 1308.

I cannot agree that this language requires us to reach a result different from that reached by the trial court. The trial court has determined that the Commonwealth cannot satisfy the requirements of *Smoyer.* The court has found as a fact, and the finding is supported by the record, *see* N.T. 12/21/81 at 12, 14, 20, that "[n]one of the statements of any of the four witnesses [who were subsequently hypnotized] were recorded or preserved verbatim except as a loose synopsis in the police notes [of the investigating officer.]", slip op. of tr. ct. at 2, and that the Commonwealth "failed to employ even the most minimal safeguards to preserve the testimony of those witnesses for use at trial," *id.* at 11. It therefore ruled that the prior statements of those witnesses, preserved only in the notes of the investigating officer, were inadmissible for use at trial. Slip op. of tr. ct. at 12. *Compare Commonwealth v. Taylor,* 294 Pa.Super. 171, 439 A.2d 805 (1982) (pre-hypnotic identification by victim of her assailants properly preserved where victim had made positive identification in pre-hypnotic photo

arrays).  Under *Smoyer,* the Commonwealth therefore has no competent evidence by means of which it may "show that the testimony . . . was established and existed previous to any hypnotic process." *Commonwealth v. Smoyer, supra,* 505 Pa. at 90, 476 A.2d at 1308.

I should accordingly affirm the order of the trial court.