476 A.2d 1304

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas Long SMOYER, Appellant.**

Supreme Court of Pennsylvania,
Eastern District.

Argued Jan. 25, 1984.
Decided May 30, 1984.

84

---

Albert M. Sardella, West Chester, for appellant.

James R. Freeman, Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

McDERMOTT, Justice.

This is an appeal from the Order of the Superior Court, 302 Pa.Super. 620, 448 A.2d 1190, affirming the judgment of sentence of the Court of Common Pleas of Chester County, Criminal Division. After examination of appellant's claim we reverse.

Appellant, Thomas Smoyer, after trial by jury was convicted of aggravated assault,[1] homicide by vehicle,[2] and involuntary manslaughter.[3] The charges stem from an incident which occurred in the early morning hours of September 18, 1977, when appellant's automobile allegedly collided with the automobile driven by Laura Smoyer, appellant's wife. Laura Smoyer died as a result of the incident. The vehicle driven by Mrs. Smoyer also contained two passengers, Jeremy Smoyer, the son of appellant, and Dennis Lucas, a friend of the deceased. The admissibility of the testimony of Mr. Lucas concerning the collision is at issue in this appeal.

At appellant's trial Mr. Lucas was called to testify on behalf of the Commonwealth. Before the trial Lucas had undergone hypnosis in order to enhance his recall of the details of the accident. Prior to hypnosis he was able to recall being involved in a high speed chase with appellant during which appellant's car struck the victim's car on at least two occasions. Additionally, he remembered the victim, upon seeing appellant, say "he's going to kill me." All this information was given to the police a little more than a week after the incident. As a result of the hypnotic session, which was conducted approximately three months after the accident, Mr. Lucas recalled being struck by appellant's car a third time. This third jolt sent the victim's car into a telephone pole, resulting in her death. The

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 2702.

2. Act of June 17, 1976, P.L. 162, No. 81, § 1; 75 Pa.C.S. § 3732.

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 2504.

hypnotic session was conducted by a detective for the Chester County District Attorney's Office. The detective had taken several courses in the processes of hypnosis.

As a result of the hypnotic session defense counsel sought to suppress all the testimony of Mr. Lucas. The trial judge denied the motion, and ruled that the use of hypnotism did not render a witness incompetent, but was a factor to be used by the jury in assessing the credibility of the witness. This decision was affirmed by the court en banc.

On appeal, the Superior Court affirmed in part and reversed in part. Relying on our decision in *Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981), which was filed subsequent to appellant's trial, they held that "that portion of the testimony which was hypnotically refreshed ... was inadmissible." (Memorandum Opinion at 8.) They also held that the portion of the testimony that was elicited without benefit of hypnosis was properly admitted. *See Commonwealth v. Taylor*, 294 Pa.Super. 171, 439 A.2d 805 (1982). Lastly they held that any error in admitting the hypnotically adduced testimony was harmless beyond a reasonable doubt. Appellant herein petitioned this Court for allowance of appeal and we granted allocatur.

In this appeal the primary issue is whether the Superior Court correctly determined that admission of Mr. Lucas' hypnotically adduced testimony was harmless error. Closely related to this issue is the question whether statements of the witness made prior to the hypnotic session should have been ruled inadmissible, due to the possible effect of the hypnotic session.

In recent years the use of hypnotism to produce admissible evidence has received increasing attention. *See State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981); *State v. Mack*, 292 N.W.2d 764 (Minn.1980); *State v. Collins*, 296 Md. 670, 464 A.2d 1028 (1983); *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981); *People v. Hughes*, 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (Ct.App.1983). That it has received a mixed and changing reception is not unexpected. Hypno-

tism has had its fashions; the vaudeville seer, the facile denouement for otherwise insoluable melodrama, as a therapeutic tool to soothe cross currents of the mind, and here, to reconstruct the traumatized memory. To some it is a marvel for resting the conscious mind, allowing the untroubled memory to sort and align impaired sequence. To others, a white tablet, on which suggestion, may write or confirm what is most pleasing to the hypnotized or hypnotizer, where the medium and a message can become what was not.

We have heard, read and studied the experts. We are aware that journeys into the intersticies of the mind must be made only by careful and experienced travellers. Happy as we would be to find a final source to confirm memory or retrieve facts, we are yet unconvinced that the senses, under any circumstances, are infallible.

In *Commonwealth v. Nazarovitch, supra,* Mr. Chief Justice O'Brien examined at length the scientific state of hypnotism and found it wanting as a source of admissible evidence. Whatever its value in other disciplines, it cannot be relied upon to produce evidence untainted by untraceable factors. It is of no moment that all evidence is ultimately delivered by fallible human agency. Such fallibility is a known quantity, understood and expected in ordinary human experience. It is at least only the fallibility of the witness and not the added dimension of another stirring his psyche, waking who knows what fanciful ghosts.

■ Hence, again we hold that testimony adduced by hypnotism is inadmissible as evidence. Therefore, the hypnotically adduced testimony herein was improperly admitted.

In light of this holding we must now determine whether the error in admitting hypnotically adduced testimony in this case is grounds for a new trial.

■ The standard to be employed in determining when the introduction of inadmissible evidence constitutes revers-

ible error was articulated by this Court in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978):

> A reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If " 'honest, fair minded jurors might very well have brought in not guilty verdicts,' an error cannot be harmless on the basis of overwhelming evidence." Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

*Id.*, 476 Pa. at 413, 383 A.2d at 166.

In the present case, although the witness had a present recollection of most of the events up to the collision, it was only after hypnosis that he recalled the jolt administered by the appellant which allegedly forced the victim's car into the telephone pole, resulting in her death. This evidence was presented to the jury.

■ Employing the *Story* test, we cannot say that the jury would have reached the same result had the hypnotically adduced testimony been excluded from the trial, since it was direct evidence that tended to prove appellant was the proximate cause of the victim's death. Introduction of the latter testimony, even with a cautionary instruction to the jury that it was hypnotically adduced, as was done by the able trial judge, cannot be deemed harmless. Consequently, the case must be reversed and remanded to the Court of Common Pleas of Chester County, Criminal Division.

In addition to the above issue we must decide whether the Superior Court was correct in ruling that that part of Lucas' testimony which was not hypnotically adduced was admissible. Resolution of this issue is necessary since it will most likely arise if defendant herein is retried.

There are those concerned that a person once hypnotized is permanently "contaminated" by suggestion, intrusion or gesture, direct or indirect, intended or not, as to become

immune from any attack upon a hypnotically constructed certitude; that one previously hypnotized might maintain or obtain belief in facts which, had they not been hypnotized would crumble before their own doubts. Indeed, we deny the use of hypnotic testimony for this reason as among others. Neither do we doubt however, that hypnotism can produce facts as well as fancy, that it may have productive uses.

In *Commonwealth v. Taylor*, 294 Pa.Super. 171, 439 A.2d 805 (1982), the Superior Court rejected an argument that the "potential for fantasy and confabulation" which hypnosis allegedly produced, should invalidate a witness' entire testimony, when no information derived from the hypnotic session was introduced into evidence. This approach has been adopted in at least two other jurisdictions. *State v. Collins*, 296 Md. 670, 464 A.2d 1028 (1983); *People v. Hughes*, 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (Ct.App.1983).

The conscious mind when put to rest, isolated from immediate distractions and led to concentration upon a topic, may put order to information otherwise jumbled and confused. In a state induced by chemicals or concentration one may better remember things received by the senses and put them in their original sequence, however defective was their original reception.

Placidity may indeed freshen the memory, recalling events and connections that might aid in further discovery. However, such process does not validate the impression originally received by the senses. They always remain subject to error. Neither concentration nor chemicals can supply a defect in sight or hearing. What benefits may come from hypnotism in aiding memory or discovery are different from using the product as admissible evidence.

■ We believe that the approach of the Superior Court used in *Taylor* has some merit, under the following guidelines: whenever a person previously hypnotized is offered as a witness, the offering party must so advise the court,

and show that the testimony to be presented was established and existed previous to any hypnotic process;[4] that the person conducting the hypnotic session must be trained in the process and is neutral of any connection with the issue or the parties; and, the trial judge shall instruct the jury that the testimony of a witness previously hypnotized should be carefully scrutinized and received with caution.

At a retrial of the instant case these standards must be observed. The judgment of sentence of the Court of Common Pleas of Chester County is vacated. Appellant is awarded a new trial.

4. We are not unmindful that in some situations hypnotism may be employed prior to the apprehension of a suspect. In that case we would require that following arrest full and immediate disclosure of the hypnotic session be made to the suspect and/or his counsel.