560 A.2d 1384

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Vincent ROMANELLI, Appellant.**

Supreme Court of Pennsylvania.

Argued April 12, 1989.

Decided June 28, 1989.

Hugh A. Donaghue, Havertown, for appellant.

Sandra L. Elias, Chief, Appeals Div., Joseph J. Mittleman, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On June 3, 1981 a young woman who was waiting for a train in the Borough of Lansdowne, Delaware County, was forced into a car, raped, made to perform oral intercourse, and threatened with a knife and a hammer. Following these acts of violence, the rapist then unsuccessfully attempted to start the car, and while he wiped his fingerprints from the interior of the car, the victim escaped. She ran to her car in the parking lot, drove to her apartment and called the police.

The victim's description of the rapist was that he was a white male with dark brown hair, dark eyebrows, dark eyes, approximately five feet eight inches tall, heavy, dirty, missing several teeth and having a protruding tooth on the upper right side of his mouth. She assisted the police in preparing a composite drawing of the assailant and gave police a drawing which she herself had made.

The next day the victim assisted another police officer in producing another composite drawing and viewed 736 photographs from police files. She was unable to identify any of the persons in these photographs as her assailant, and the photographic display was not preserved.

On June 8, 1981 the victim again gave a detailed account of the attack and a description of the rapist. She stated that she was "almost positive" she would remember him if she saw him again. Immediately after this, the victim was placed under hypnosis by a law enforcement officer and the process was taped.[1] Except for a few minor details, the victim's statement under hypnosis was the same as her statements prior to hypnosis and no new information regarding the appearance of the rapist was produced.

Two months later, the victim was shown an array of eight photographs from which she identified Romanelli as the rapist. Four days after that, she was shown a different selection of eight photographs, including an older photograph of Romanelli. Again, she identified Romanelli as the assailant. Subsequently, Romanelli was tried by a jury in the Court of Common Pleas of Delaware County, Criminal Division, and convicted of rape, unlawful restraint, indecent assault, involuntary deviate sexual intercourse, simple assault, and possession of instruments of crime.

Prior to trial, Romanelli moved to suppress all of the victim's testimony on the grounds that it was impermissibly tainted by hypnosis. The trial court then reviewed the tape

1. The hypnotic session was videotaped and the trial court reviewed that tape. The record, however, contains only an audiotape of the hypnotic session and a transcript of the audiotape. We have reviewed both the tape and the transcript.

of the pre-hypnotic and hypnotic interviews and found them to be non-suggestive. The victim, therefore, was permitted to testify as to information she had given police prior to hypnosis and to identify Romanelli as the rapist, but the court suppressed all of the victim's testimony "insofar as it relate[d] to those matters in the hypnotic interview which were not previously referred to or stated by her to have occurred in any statement or interview given by [the victim] prior to being hypnotized on June 8, 1981."

Post-trial motions were filed and denied and Romanelli was sentenced on September 7, 1982. From this judgment of sentence, Romanelli appealed to Superior Court, which affirmed, 336 Pa.Super. 261, 485 A.2d 795 (1984). Romanelli then petitioned this Court for allowance of appeal, and we granted allocatur to address the issues of whether a hypnotist employed by the police can be sufficiently "neutral" as we have required in earlier cases, and whether an identification subsequent to hypnosis is admissible where the Commonwealth did not preserve a pre-hypnosis photographic display from which no identification was made.

In *Commonwealth v. Smoyer*, 505 Pa. 83, 89–90, 476 A.2d 1304, 1308 (1984), we held that a witness who had been hypnotized could testify as to information *not* derived from the hypnotic session subject to the following guidelines:

whenever a person previously hypnotized is offered as a witness, the offering party must so advise the court, and show that the testimony to be presented was established and existed previous to any hypnotic process; that the person conducting the hypnotic session must be trained in the process and is neutral of any connection with the issue or the parties; and, the trial judge shall instruct the jury that the testimony of a witness previously hypnotized should be carefully scrutinized and received with caution.

The reason for the *Smoyer* safeguards had been stated in our earlier case of *Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981):

While the historical accuracy of recall may not be significant for psychotherapy purposes, it is the very quality at stake in the controversy surrounding forensic hypnosis. Furthermore, the hypnotic subject, upon awakening, is often imbued with a confidence and conviction as to his memory which was not present before. Prehypnosis uncertainty becomes molded, in light of additional recall experienced under hypnosis, into certitude, with the subject unaware of any suggestions that he acted upon or any confabulation in which he engaged. The subject's firm belief in the veracity of his enhanced recollection is honestly held, and cannot be undermined through cross-examination. As one learned scholar observed, "The nature of hypnosis is such that the subject's critical judgment is suspended and he responds to the demand for exact, photographic recall even when his actual recall is vague and doubtful."

*Id.*, 496 Pa. at 105, 436 A.2d at 174. (Citations omitted.) Thus, we require the safeguards set out in *Smoyer* any time a witness has been hypnotized because of the danger that the witness, although he is testifying as to that which was stated *prior* to hypnosis, may have been influenced by the hypnotist, even as to those matters that preceded hypnosis. Here, the need for a neutral hypnotist is even more apparent, for the witness in the instant case testified not only to prior statements, but also to a present application of a past description.

We come now to our first reason for granting allocatur, the question of whether a person employed by the police who also conducts the hypnosis may be said to be "neutral of any connection with the issue or the parties." *Smoyer*, 505 Pa. at 90, 476 A.2d at 1308. It is perhaps true that a hypnotist employed by the police cannot, by virtue of his employment, give the appearance of being as neutral as a private practitioner. We are, however, unwilling to formulate a *per se* rule that police hypnotists are not neutral, but instead, prefer to examine the facts of each case. Where, as here, a tape recording of the entire hypnotic

session is made and the trial court determines that the session was conducted non-suggestively, the neutrality requirement has been met. The purpose of neutrality, after all, is to ensure that the hypnosis be conducted in a non-suggestive environment. Once it is determined that the environment was, in fact, nonsuggestive, the purpose of the requirement has been met.

As to the second issue, whether it was error not to have preserved the photographic display of 736 photographs originally shown to the victim, we note that the Commonwealth is required to preserve the photographic display in cases where an identification has been made. *Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977). Romanelli contends, however, that since the identification was made *after* an hypnosis, it was the product of confusion and confabulation. He also asserts that the inability of the Commonwealth to produce the photographic display denied him the opportunity to establish this claim by proving that his photo was included in the original 736 photos which the victim viewed, and that she failed to recognize him.[2]

The first aspect of Romanelli's claim, then, is that when a victim has given police a description of her attacker, but has not identified the attacker prior to hypnosis, her post-hypnotic identification *per se* violates the requirement of *Smoyer* that "the testimony to be presented [at trial] was established and existed previous to any hypnotic process." 505 Pa. at 89–90, 476 A.2d at 1308.[3] In other words,

2. Romanelli's theory is that if his photograph were included in the 736 photographs from which the victim failed to make an identification, the witness's credibility would be impeached. Further, he argues that the influence of hypnosis would be apparent, for if she failed to make an identification from the first photographic display, but made an identification from a subsequent photographic display, an inference which might be drawn is that her memory was distorted by hypnosis.

3. As Romanelli puts it, "In the instant case, much of the weight of the defendant's argument rests upon the proposition that a witness whose testimonial abilities are subjected to the inherent changes of hypnosis should not be allowed to testify.... It is the contention of the defendant that he was identified as the assailant solely because of the confusion and confabulation produced in the mind of [the victim] as a result of being hypnotized." Brief at 19–20.

he is arguing that a post-hypnotic identification is, by definition, new information produced by hypnosis, which violates the rule of *Smoyer*.[4]

This claim assumes that since one cannot know the effect of hypnosis, one cannot be sure that a subject's post-hypnotic testimony (here, post-hypnotic identification) will be accurate, even if the hypnotic session is neutral and even if it is non-suggestive. An eager subject may be determined to apply the pre-hypnotic criteria to someone, merely to please the hypnotist.

On the other hand, if the subject produced no new information during the hypnotic session, it cannot be said that she was so eager to "confabulate" that she made up answers when she would have been most likely to do so—during the hypnotic session. And if she produced no new answers then, it seems unlikely that the motive to please the hypnotist would control the victim long after the hypnotic session, when she applied pre-hypnotic descriptions to a photo array.

■ Because the victim's description testimony existed prior to the hypnosis and the identification was merely an application of descriptive criteria which she had espoused all along, it is our view that it meets the *Smoyer* requirement that the testimony be established prior to hypnosis. It was not error, therefore, to allow this testimony.

■ The last aspect of this claim is that it was error not to have preserved the photographic array from which no identification was made. Since, as we have determined, the victim's identification testimony was no more than the application of a pre-existing statement to a new photographic array, and then to Romanelli himself, Romanelli's assertion that the identification was produced by the hypnosis is without foundation. And if the identification was not pro-

4. Although we are primarily concerned with the claim that it was error not to preserve the array of 736 photographs, we also address the claim that the post-hypnotic identification was impermissible, because we need not reach the former claim if the post-hypnotic identification was so obviously distorted that it was invalid even apart from alleged difficulties with the photographic array.

duced by hypnosis, then the case is in the same posture as any other case in which there has been an identification from one photo array following other photo arrays in which no identification was made. In such a case, there is no requirement that the original photo array be preserved. It was not error, therefore, to fail to preserve the original photo display.

Affirmed.

ZAPPALA, J., concurs in the result.