640 A.2d 454

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Cornell GALLOWAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 10, 1993.

Filed April 12, 1994.

Mitchell A. Sommers, Ephrata, for appellant.

Joseph C. Madenspacher, Dist. Atty., Lancaster, for Com., appellee.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas of Lancaster County which dismissed appellant's petition for post-conviction relief filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541 *et seq.* On March 29, 1977, appellant was convicted of murder in the first degree in the slaying of Daniel Gebhard and murder in the first degree as a principal in the second degree in the death of Barry Kimmet. We affirm appellant's conviction in the death of Barry Kimmet, but we reverse his conviction for the murder of Daniel Gebhard and remand for a new trial.

Herein, appellant contends that he is entitled to a new trial. He argues that the lower court erred in refusing to apply retroactively *Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981), which bars the admission of hypnotically-induced testimony. See, 42 Pa.C.S.A. § 9543(a)(2)(i). Appellant also contends that he is entitled to post-conviction relief because he was not informed prior to trial that the Commonwealth's key-witness was hypnotized and such information would have affected the outcome of the trial. See, 42 Pa. C.S.A. § 9543(a)(2)(vi). Finally, appellant argues that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the Commonwealth to disclose all material, exculpatory evidence, since the Commonwealth failed to disclose that its key witness' recollection was hypnotically-refreshed prior to trial. See, 42 Pa.C.S.A. § 9543(a)(2)(i).

The record reveals that on August 2, 1969, Daniel Gebhard and Barry Kimmet were slain in related drive-by shootings. Those shootings were the result of racial unrest in the city of Lancaster.[1] Appellant and numerous other black persons traveled in at least two vehicles to the area of Bleacher's Cafe, where certain white persons who allegedly threatened other black persons, were said to be waiting to fight. At trial, appellant admitted to being in the one of the automobiles when the men were shot. However, he denied having pos-

1. The victims in this case were both white, and all defendants in the case were black.

sessed or shot a weapon during the incidents. Nevertheless, appellant was convicted of shooting Daniel Gebhard in the head with a high-powered rifle. He was also convicted of aiding and abetting his brother, Lorenzo Galloway, who shot Barry Kimmet in the head with a high-powered rifle.

The Commonwealth presented the testimony of Dorothy Easley who was driving one of the two vehicles which participated in the shootings. She testified that she saw appellant lean out of the front passenger window of the other vehicle with a rifle in his hand, take aim and shoot. She also testified that afterwards, she heard appellant say to his brother Lorenzo that "I got one, and you got the other."

It is important to note that the shootings took place almost eight years prior to the trial. That fact is significant because appellant only recently became aware that Dorothy Easley was hypnotized prior to trial to refresh her recollection of the long-past event. The Commonwealth acknowledges that Ms. Easley was hypnotized approximately six months prior to trial by John B. Shenk. However, the Commonwealth avers it possesses no other information concerning the event. It is undisputed that neither appellant nor his counsel was informed of the hypnosis prior to trial.[2]

First, we will address appellant's contention that he is entitled to a new trial because the Commonwealth introduced the testimony of Dorothy Easley whose recollection of the events of August 2, 1969, were hypnotically refreshed prior to trial. Appellant correctly notes that in *Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981), our Supreme Court held that a witness' hypnotically-refreshed testimony was properly excluded where the witness had no recollection of the facts which would have been the subject of the testimony prior to the hypnosis. Our Supreme Court again rejected the use of hypnotically-induced testimony in *Commonwealth v.*

---

**2.** The record does not reveal how or when appellant's trial counsel eventually learned that Ms. Easley was hypnotized. However, given the fact that the Commonwealth has not asserted waiver in the PCRA action, we assume it was proximate to the time when appellant filed this PCRA petition. We also note that the Commonwealth has not raised the issue of prejudicial delay pursuant to 42 Pa.C.S.A. § 9543(b).

*Smoyer,* 505 Pa. 83, 476 A.2d 1304 (1984). *See also, Commonwealth v. DiNicola,* 348 Pa.Super. 405, 502 A.2d 606 (1985), *cert. denied,* 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 768 (1988); *Commonwealth v. Reed,* 400 Pa.Super. 207, 583 A.2d 459 (1990), *allocatur denied,* 528 Pa. 629, 598 A.2d 282 (1991); *Commonwealth v. McCabe,* 303 Pa.Super. 245, 449 A.2d 670 (1982).[3]

■ Despite the fact that hypnotically-refreshed testimony is generally not admissible, appellant is not entitled to *postconviction* relief on the basis of the rule of evidence set forth in *Nazarovitch, supra.* "[A] new rule of law to which we give retroactive effect, will not be applied to any case on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal and the issue was properly preserved there, or, as here, is non-waivable." *Commonwealth v. Gillespie,* 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986). *See also, Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (setting forth the federal rule for retroactive application of new law in collateral proceedings); *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989) (applying *Gillespie*); *Commonwealth v. Riggins,* 374 Pa.Super. 243, 255, 542 A.2d 1004, 1010 (1988), *allocatur denied,* 522 Pa. 583, 559 A.2d 527 (1989) (applying *Gillespie* and citing cases). *Nazarovitch, supra,* was decided by our Supreme Court on October 29, 1981, and appellant's conviction became final when our Supreme Court affirmed his judgment of sentence on September 24, 1981. *See, Commonwealth v. Galloway,* 495 Pa. 535, 434 A.2d 1220 (1981). Thus, appellant is not entitled to post-conviction *collateral* relief since his criminal judgment was final prior to the Supreme Court's

**3.** It has been held that a witness may testify to events which he or she remembered without (i.e., prior to) the hypnosis. *Commonwealth v. Romanelli,* 336 Pa.Super. 261, 485 A.2d 795 (1984), *affirmed,* 522 Pa. 222, 560 A.2d 1384 (1989); *Commonwealth v. Taylor,* 294 Pa.Super. 171, 439 A.2d 805 (1982). The Commonwealth argues that Dorothy Easley remembered much of her testimony without hypnosis and, thus, her testimony was properly admitted. However, we find that argument must fail because the Commonwealth offered absolutely no evidence of record to show what amount of Ms. Easley's testimony, *if any,* was remembered without the aid of hypnosis.

decision to exclude hypnotically-influenced testimony from admission at trial.[4]

■ Appellant also claims that he is entitled to a new trial because the recently-discovered evidence of Ms. Easley's hypnosis constituted "exculpatory evidence [unavailable at the time of trial] that has subsequently become available and that would have affected the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). To be entitled to a new trial on the basis of after discovered evidence, appellant must establish, "that the evidence was discovered after trial and could not have been obtained at trial by reasonable diligence, that it is not cumulative or of such a nature that it merely impeaches credibility, and that it would be likely to compel a different result." *Commonwealth v. Conley,* 232 Pa.Super. 432, 335 A.2d 721, 722 (1975) (applying identical language of the now-repealed Post Conviction Hearing Act). *See also, Commonwealth v. Favinger,* 358 Pa.Super. 245, 250, 516 A.2d 1386, 1389 (1986), *allocatur denied,* 516 Pa. 612, 531 A.2d 779 (1987). Since the evidence in question, i.e., that Ms. Easley was hypnotized six-months prior to trial, goes solely to the credibility of her testimony, appellant is not entitled to relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi).

■ Despite our refusal to grant relief based on appellant's first two assertions of error, we nevertheless conclude that appellant has presented a meritorious claim that the Commonwealth impermissibly violated *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963), wherein the United States Supreme Court held: "[T]he suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith

4. Even if we assume that appellant's issue was not waived due to the fact that he was not informed of the hypnosis by the Commonwealth, we reach the same result. *See, Gillespie* (even though issue was non-waivable, defendant not entitled to post-conviction relief where his conviction was final prior to the change in the law of which he wishes to take advantage).

or the bad faith of the prosecution." [5] Appellant asserts that information concerning the hypnosis of Ms. Easley is the type of evidence which the Commonwealth was required to produce pursuant to *Brady, supra,* and we agree.[6]

In *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108 (1972), the United States Supreme Court, quoting *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1220 (1959), clearly stated: "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general [*Brady*] rule." Thus, at the time of appellant's trial, the Commonwealth was required to provide appellant with information in its possession which impacted upon the credibility of its witnesses. We are convinced that the evidence of Ms. Easley's hypnosis is clearly evidence affecting credibility.[7]

5.  We note the distinction between the ordinary "after-discovered evidence" case and the situation where the prosecutor in some way fails to disclose exculpatory evidence was ably set forth in *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342, 354 (1976), as follows:

    On the one hand, the fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal. If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice. (Footnote omitted.)

    It is this less "severe burden", discussed *infra,* that explains why appellant may prevails upon his *Brady* claim while his after-discovered evidence claim provides no relief.

6.  Appellant is entitled to PCRA relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(i).

7.  We acknowledge our earlier holding that *Nazarovitch, supra,* is inapplicable to the present case, and, at the time of appellant's trial, our Supreme Court had not yet ruled that hypnotically-influenced testimony is inadmissible. Nevertheless, in every jurisdiction which permitted the introduction of hypnotically-induced testimony, the trier of fact had the duty of weighing the reliability of the evidence in light of the hypnosis. *See, Nazarovitch,* 436 A.2d at 175 (citing cases). Thus, we are likewise

■ However, to be entitled to a new trial under *Brady, supra,* and its progeny, the evidence affecting credibility must be material. *See also, Giglio, supra; Agurs, supra; Commonwealth v. Wallace,* 500 Pa. 270, 275–80, 455 A.2d 1187, 1190–1192 (1983); *Commonwealth v. Rose,* 483 Pa. 382, 393–97, 396 A.2d 1221, 1227–1229 (1979); *Commonwealth v. Cain,* 471 Pa. 140, 152, 369 A.2d 1234, 1240 (1977); *Commonwealth v. Floyd,* 259 Pa.Super. 552, 557–558, 393 A.2d 963, 966–967 (1978). In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the United States Supreme Court, after reviewing *Brady, supra,* and its progeny, concisely defined "materiality" as follows:

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.[8]

Thus, we are required herein to determine whether there is a reasonable probability that, had the jury been permitted to weigh the testimony of Dorothy Easley in light of her hypno-

convinced that the Commonwealth should have known that evidence of Ms. Easley's hypnosis was crucial to both appellant's ability to cross-examine her and the jury's ability to weigh her testimony.

8. We note that prior to *Bagley, supra,* the definition of materiality differed depending upon whether the defendant "specifically requested" the exculpatory information, made a "general request" for exculpatory information or made "no request" for the information, but the evidence was such that the Commonwealth should have recognized its exculpatory nature. *See, Bagley,* 473 U.S. at 681, 105 S.Ct. at 3383; *Agurs, supra.* Herein, appellant did make a general request for information which would affect the credibility of witnesses and also a general request for exculpatory information, although he did not specifically ask if any witnesses had been hypnotized. Upon review of *Brady, supra,* and its progeny, we find that the standard of materiality set forth in *Bagley, supra,* is the same as that which would have been applicable under the tripartite materiality analysis set forth in *Agurs, supra. See,* LaFave and Israel, *Criminal Procedure,* 2d Ed., § 20.7 (1992). Moreover, the Court of Appeals has *sub silentio* applied the definition of materiality set forth in *Bagley, supra,* retroactively. *Landano v. Rafferty,* 856 F.2d 569 (3rd Cir.1988), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989); *Trujillo v. Sullivan,* 815 F.2d 597 (10th Cir.1987), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

sis by the Commonwealth, the result of the proceeding would have been different. We assess whether there is a "probability sufficient to undermine [our] confidence in the outcome" in light of the "totality of the circumstances". *Bagley*, 473 U.S. at 683, 105 S.Ct. at 3384. *See also, Giglio*, 405 U.S. at 154, 92 S.Ct. at 766; *Porretto v. Stalder*, 834 F.2d 461 (5th Cir.1987); *Wallace, supra; Rose, supra; Engberg v. Meyer*, 820 P.2d 70 (Wyo.S.Ct.1991).

Instantly, both the lower court and the Commonwealth submit that there is "no reasonable probability that the result of the proceeding would have been different" had appellant been able to impeach Ms. Easley on the basis of her hypnosis. In support thereof, the lower court and the Commonwealth note that Ms. Easley was "only one of twenty-five witnesses called by the Commonwealth who implicated petitioner in the double murder for which he was convicted and thus the Commonwealth did not rely 'almost entirely' on her testimony . . ." Trial Court Opinion, pp. 6–7. However, such a summation distorts the facts with respect to the death of *Daniel Gebhard.*

It is undisputed that appellant was involved in the racial violence and the two murders which took place on the evening of August 2, 1969. Appellant admitted that he and his brother Lorenzo Galloway helped to organize the group of blacks who later drove through Lancaster and shot Daniel Gebhard and Barry Kimmet. N.T., p. 1407–1410. Appellant admitted he was seated in the front right passenger seat of one of the cars. He also stated that Jonathan Evans was driving the car, Robert Hobbs was seated in the middle of the front seat, and Lorenzo Galloway, Dale Troop and Barry Wright were seated in the back seat, with Lorenzo located directly behind him in the right rear seat. N.T., pp. 1411–1412. He admitted he was seated in the car when the shots were fired by someone in the back seat, although he stated he did not see who fired the shots. N.T., pp. 1411, 1421. Appellant later attributed the shots to his brother Lorenzo Galloway.

The Commonwealth presented similar evidence and, excepting the testimony of Dorothy Easley, the most significant testimony was that of the other persons travelling with appellant in Robert Hobbs' car. Robert Hobbs testified that he was seated in middle of the front seat of his car, while Jonathan Evans drove. He also testified that Dale Troop was in the left rear seat and Lorenzo Galloway was in the right rear seat. Hobbs could not remember where appellant was seated, although he knew appellant and Barry Wright were also in the car. N.T., pp. 1059, 1063. Hobbs stated that he heard two shots fired from the back seat of the car and that he later found two spent shell casings in the back seat. N.T., pp. 1063–1065. He stated that he saw Lorenzo Galloway in possession of a rifle while he was seated in the rear seat of the car. However, he could not remember who held the other rifle. Most importantly, Hobbs testified that he did not see who fired the shots. N.T., pp. 1062–1065. Hobbs also testified that in exchange for his testimony, the Commonwealth agreed not to prosecute him for murder. N.T., p. 1081.

Jonathan Evans also testified that he was driving the car in which Robert Hobbs, Barry Wright, Dale Troop, Lorenzo Galloway and appellant were passengers and that only he and Hobbs were seated in the front seat. N.T., pp. 1089–1090. He further testified that he heard shots fired from the back seat of the car.[9] However, he never saw any weapons and, more importantly, did not see who fired the shoots. N.T., p. 1091.

Barry Wright agreed that he, appellant, Lorenzo Galloway, Jonathan Evans, Dale Troop and Robert Hobbs were in Hobbs' car. Wright testified that Dale Troop was in the left rear seat, Lorenzo Galloway was in the middle of the rear seat and he was in the right rear seat., N.T., pp. 1141. Wright testified that he possessed a shotgun, Troop had a pistol and Lorenzo Galloway had a Winchester rifle. N.T., p. 1142. Wright also admitted to having discharged his weapon. N.T., p. 1143. Wright stated that after firing his gun, he ducked to

9. On cross-examination, Evans testified that he heard only one shot. N.T., p. 1098.

the floor of the rear seat. N.T., p. 1142, 1144. Several minutes later, he heard another shot but did not see who fired it. N.T., p. 1144. After that shot, Wright testified that he heard appellant say "I got him." N.T., pp. 1142, 1144. Wright also testified that he had entered into a plea agreement with the Commonwealth wherein exchange for his testimony, he would receive a eleven and one-half month to twenty-three month sentence for his involvement in the shootings. N.T., p. 1138.

Dale Troop testified that he, Barry Wright and Lorenzo Galloway were seated in the back of the Hobbs' car, and appellant was seated in the right front seat. N.T., pp. 1318–1319. He testified that he heard shots fired from the car, but that he did not see who fired the shots. N.T., p. 1319. He also testified that he possessed a thirty-eight caliber revolver and Lorenzo Galloway possessed either a rifle or a shotgun. N.T., p. 1336.

Lorenzo Galloway was deceased at the time of the trial. Other than those persons in Hobbs' vehicle. Dorothy Easley was the Commonwealth's most significant witness, and, certainly, in regards to the death of Daniel Gebhard, she was the Commonwealth's *key witness* against appellant. Ms. Easley testified, *inter alia,* that she was driving the vehicle which was following appellant and the Hobbs vehicle. N.T., p. 1203. She stated that she saw appellant lean out of the car window with a gun and fire a shot. N.T., p. 1204. She also testified that she had earlier seen both appellant and Lorenzo Galloway in possession of rifles. N.T., p. 1205. Finally, Ms. Easley stated that, after the shooting, she overheard appellant say to his brother Lorenzo, "I got one and you got the other one. You know, I had to come and get you [Lorenzo] because none of these other hilly mother fuckers are going to do anything and I know that and nobody has any heart but you and me." N.T., p. 1207. She also said that appellant and Lorenzo Galloway admitted to the killings on other occasions. N.T., pp. 1208, 1209. She also testified that in exchange for her testimony, she was hoping for a reduction of a federal bank robbery sentence she was serving.

Numerous other witnesses testified on behalf of the Commonwealth. However, with the sole exception of Dorothy Easley, not a single witness testified that he or she saw appellant fire a weapon. In fact, contrary to the lower court's recitation of the facts, not a single witness, other than Ms. Easley, testified that appellant was in possession of a gun on the night in question.[10] Further, only Dorothy Easley testified that she *saw and heard* appellant admit to the shooting.[11] The Commonwealth submits that the evidence of Dorothy Easley's hypnosis is not material because of the overwhelming evidence of appellant's guilt. While we agree with the Commonwealth when we review appellant's conviction in the death of Barry Kimmet, we must disagree when we apply the same analysis to his conviction in the death of Daniel Gebhard.

It is undisputed that appellant was not the person who shot Barry Kimmet, and he was convicted as a principal in the second degree in the first degree murder of Mr. Kimmet. As the preceding recitation of the facts and other trial testimony reveals, appellant was undoubtedly an active participant in both of the shootings and the only significant question was whether he was the "trigger man" in the murder of Daniel Gebhard. The testimony of Dorothy Easley, albeit prejudicial to appellant's case, was not crucial to appellant's conviction for first degree murder of Barry Kimmet as a principal in the second degree. Even if appellant had been able to impeach Ms. Easley's credibility with evidence of hypnosis, other evi-

10. We note that in its opinion, the lower court quoted, as its statement of the facts, the recitation of the facts which it gave to the jury prior to their deliberations. See, Trial Court Opinion, pp. 9–11; N.T., pp. 1482–1487. However, the lower court made two glaring misstatements of the facts during his jury instruction which went uncontested by appellant's trial counsel. First, the court stated that Robert Hobbs testified that he saw appellant in possession of a rifle on the night in question. N.T., p. 1485. Second, the court informed the jury that Barry Wright testified that appellant possessed a Winchester rifle. N.T., p. 1485. However, a review of both men's trial testimony reveals that neither saw appellant with a gun and neither saw appellant discharge a gun. See, summaries of testimony, *supra*.

11. Barry Wright testified that shortly after a shot was fired, he heard appellant say, "I got him." N.T., p. 1142. However, it is unclear whether Wright actually saw appellant make that statement, since Wright was lying on the floor of the car when the statement was made.

dence of his participation as a principal in the second degree in the murder of Barry Kimmet was overwhelming. Simply, impeachment of Ms. Easley would not have undermined our confidence in his conviction as it related to the death of Mr. Kimmet. *Cf., Porretto,* 834 F.2d at 465–466 (given overwhelming evidence and numerous attacks on eyewitness' credibility, failure to disclose hypnosis of witness did not affect verdict and was not *Brady* violation); *Engberg,* 820 P.2d at 76 (no *Brady* violation where witness who could have been impeached with hypnosis evidence was only one of several eyewitness).

However, as to appellant's other conviction, we conclude that evidence of the hypnosis of Ms. Easley's was material under *Bagley, supra,* and, therefore, the Commonwealth's failure to disclose that information mandates that we grant appellant a new trial on the charge of first degree murder of Daniel Gebhard. The record clearly reveals that Ms. Easley was the only witness to state that she saw appellant possess and shoot a gun. She also was only one of two witnesses to testify that she heard appellant admit to shooting Mr. Gebhard.[12] Ms. Easley was clearly the Commonwealth's key witness in the death of Mr. Gebhard. Thus, it was crucial to appellant's defense to impeach the reliability of her recollection of the night in question, especially in light of the fact that the trial took place over seven years after the shootings.

We are convinced that there is a reasonable probability that had evidence of Ms. Easley's hypnosis along with testimony concerning the questionable nature of hypnotically-refreshed recollection been admitted, the result of appellant's trial for the first degree murder of Daniel Gebhard would have been different. *Bagley, supra.* Presented with such information, the jury could have legitimately inferred that Ms. Easley's recollection of the event was a product of the hypnosis and not what she truly saw, and, thus, there would have been no

12. Barry Wright testified that he heard appellant say, "I got him." However, the record also reveals that Wright received a very favorable plea agreement in exchange for his testimony. Further, it revealed that Wright never saw appellant with a weapon on the night in question, despite the fact that appellant was seated directly in front on Wright when appellant allegedly shot Mr. Gebhard and said "I got him."

credible testimony that appellant shot Mr. Gebhard or even possessed a weapon. There is an eminently reasonable likelihood that the outcome of the trial would have been affected by a full assessment of Ms. Easley's testimony, and our confidence in appellant's conviction for the murder of Daniel Gebhard has been undermined by the Commonwealth's failure to disclose the impeachment evidence. *Compare, Giglio, supra* (reversible error where prosecution failed to disclose evidence which could have been used to impeach sole government witness) and *Wallace, supra* (reversible *Brady* violation where prosecution failed to reveal evidence which could have been used to impeach the credibility of the Commonwealth's "star" witness) with *Engberg, supra* (no *Brady* violation where witness who could have been impeached with hypnosis evidence was only one of several eyewitness).[13]

PCRA order affirmed in part and reversed in part. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting.

I concur in the majority's decision to reverse the order of the P.C.R.A. court and grant appellant, Cornell Galloway, a new trial on the charge of first degree murder in connection with the killing of Daniel Gebhard. The Commonwealth's failure to disclose the pre-trial hypnosis of Dorothy Easley, its key witness, was a violation of the prosecution's obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10

---

**13.** We note that this is a hollow victory for appellant, regardless of whether the Commonwealth retries appellant for the murder of Daniel Gebhard. Although our decision herein necessarily vacates one of appellant's consecutive life sentences, appellant nevertheless will spend the rest of his life in prison for his part in the death of Barry Kimmet. The fact that appellant's life sentence for the murder of Daniel Gebhard is vacated in reality does not reduce appellant's sentence. *See, Commonwealth v. Szczesniewski*, 404 Pa.Super. 617, 591 A.2d 1055, 1057 (1991), *allocatur denied*, 530 Pa. 654, 608 A.2d 29 (1992) (two consecutive life sentences are no longer than two concurrent life sentences since, in Pennsylvania, a life sentence is just as the name implies, imprisonment for life).

L.Ed.2d 215 (1963) to disclose evidence favorable to the defense. The fact that Dorothy Easley had been hypnotized prior to appellant's trial was relevant and material evidence which, if it had been disclosed, may well have been utilized by the defense to attack the credibility and reliability of Easley's testimony. Therefore, I agree with the majority that appellant must be afforded a new trial on the charge that he murdered Daniel Gebhard during the early morning hours of August 2, 1969. See: *United States v. Miller*, 411 F.2d 825 (2nd Cir.1969); *Emmett v. Ricketts*, 397 F.Supp. 1025 (N.D.Ga.1975); *People v. Angelini*, 649 P.2d 341 (Colo.App. 1982).

Having reached this conclusion, however, I am unable to agree with the majority that a different result should be reached with respect to appellant's conviction for the murder of Barry Kimmet. After a careful reading of the record of appellant's trial, I am not persuaded that appellant's role as an accomplice in this murder was established by overwhelming evidence apart from the testimony of Dorothy Easley. In my judgment, Easley's testimony that she observed appellant in possession of and firing a weapon, as well as her testimony as to inculpatory statements made by appellant following the killings of Gebhard and Kimmet, was crucial to the Commonwealth's ability to prove that appellant acted with a specific intent to kill. Without this evidence a jury might well have been unable to find appellant guilty of first degree murder as an accomplice in the killing of Barry Kimmet. Cf. *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (1994) (an accomplice must possess the specific intent to kill in order to be found guilty of first degree murder, as the guilt of an accomplice cannot be premised solely upon the mental state of the principal). I am constrained to conclude, therefore, that the Commonwealth's failure to disclose the pre-trial hypnosis of Dorothy Easley was also material to the charge that appellant was an accomplice in the murder of Barry Kimmet. Accordingly, appellant should also be awarded a new trial on this charge.