J-S73019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESSICA LYNN ALINSKY, | : | |
| | : | No. 676 MDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence March 22, 2016
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003915-2013

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                              **FILED MAY 25, 2018**

Appellant, Jessica Lynn Alinsky, appeals from the Judgment of Sentence entered after a jury convicted her of Third-Degree Murder and Tampering with/Fabricating Physical Evidence.  She challenges the denial of her Motion for a Mistrial that was based on a **Brady**[1] violation.  After thorough review, we conclude that the trial court properly denied Appellant's Motion for a Mistrial.  Accordingly, we affirm.

**Background**

The relevant factual and procedural history, gleaned from our review of the record and the trial court's Pa.R.A.P. 1925(a) Opinion, is as follows.  On September 2, 2011, Appellant called 911 to report that her boyfriend had shot

_____

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

_____

*   Retired Senior Judge assigned to the Superior Court.

himself in the head. When police officers arrived, the victim was lying incapacitated on his back on the floor with a gunshot wound near his left nostril. A gun was in his left hand with his finger in the trigger well. The couch near him contained significant amounts of blood, and there was blood smearing and splatters around and on the victim's body. Appellant gave the attending police officers a statement. The victim died from the gunshot wound.

Over the next two years, Appellant gave several statements to police officers in which she provided differing explanations of the circumstances surrounding the shooting: she alleged the shooting was the result of mistake or accident or suicide.[2] On November 18, 2013, the Commonwealth charged Appellant with Criminal Homicide and Tampering with/Fabricating Physical Evidence.[3] The court subsequently allowed the Commonwealth to amend the information to include a charge of Third-Degree Murder.

A jury trial commenced on February 1, 2016, with testimony from numerous individuals. Relevant to this appeal, Pennsylvania State Trooper

---

[2] Appellant told police the following variations of the events: (1) she and her boyfriend had had an argument and she was upstairs when he shot himself; (2) she was in the downstairs bathroom when she heard a gunshot and found the victim on the floor; (3) she was in the living room and saw him shoot himself; (4) she was in the living room and tried to get the gun out of his hand and it went off, while her finger was on the trigger, and that it was their fighting caused the shooting. Evidence revealed that the victim had been moved from the couch to the floor after the shooting. Trial Ct. Op., filed 3/31/17, at 2.

[3] 18 Pa.C.S. § 2501(a); 18 Pa.C.S. § 4910(1).

John Corrigan testified as an expert in forensic crime scene investigation, blood spatter analysis, and crime scene reconstruction. In addition to testifying about photographs he had taken at the crime scene, he also testified about the November 25, 2013 report he had drafted as an expert for the Commonwealth. *See* N.T., 2/3/16, at 462-71.

On February 10, 2016, defense counsel filed a Motion for a Mistrial alleging a *Brady* violation. Appellant's counsel asserted that Mark Reynolds, Ph.D., a forensic science expert in the fields of blood pattern analysis and crime scene reconstruction, had called counsel on the evening of February 5, 2016, from Australia to inform him that Trooper Corrigan had presented his November 25, 2013 Report during an 80-hour training course at which Dr. Reynolds had been one of the instructors.[4] Dr. Reynolds told Appellant's counsel that he had reviewed Corrigan's report during the training conference, and had challenged its findings, conclusions, and opinions as flawed, not supported by scientific principles, and not presented with reasonable alternative conclusions supported by the evidence. *See* Motion for Mistrial, filed 2/10/16, at ¶¶13-26.

The court held a hearing in chambers on the Motion at which Dr. Reynolds testified via telephone. Defense counsel then examined Trooper Corrigan who testified about his report and the seminar with Dr. Reynolds. *See* N.T., 2/10/16, at 1101-11; Trial Ct. Op. at 6-10.

---

[4] Dr. Reynolds had not been retained by Appellant.

The court denied the Motion for a Mistrial, "[h]owever, the court pointed out to [Appellant] that [s]he had the opportunity to recall Trooper Corrigan in [her] case in chief in order to cross examine him or to call an expert witness of [her] own." *Id*. at 10 (citing N.T., 2/10/16, at 1125-26). The court also indicated that it would entertain a defense request that Dr. Reynolds be qualified as an expert. *See id*. When Appellant's counsel argued that Dr. Reynolds would not be in this country until April 4, 2016, and would need an additional three months to prepare a report, the court stated:

> The [c]ourt's more than agreeable to make this trial amenable to your witness. You already sent him all of the testimony of Trooper Corrigan. You placed that of record. The stenographer transcribed all of his testimony, his testimony that was presented. He has the initial report, which he said is identical to this report. He has all of the testimony. It has already, as we noted, been transcribed and been forwarded to him. That's in the e-mail and through your representation.
>
> And if you cho[o]se to retain him, that is the Court will allow him to proceed as an expert and, in fact, we can proceed tomorrow if you finalize your agreement. His e-mail says you need to make a formal agreement. He said that today. In fact, he said he would make himself available once you have a formal agreement if you choose to retain him as your expert.
>
> We can look to, as I said, forms of Skyping. He needs to be video available, whatever means we can accommodate that. And we would continue with your case tomorrow . . . for testimony and when you're finished with whatever witnesses you have, we could [ ] excuse the jurors until Tuesday, which would give your expert Thursday, Friday, Saturday, Sunday and Monday to get it to the DA's Office for testimony on Tuesday[.]
>
> [Dr. Reynolds] said [ ] when he was here with us, he would make himself available once he had a formal agreement. If that's reached, let me know and we'll move to accommodate. But at this point, we'll convene tomorrow and you can let me know.

N.T., 2/10/16, at1127-28; Trial Ct. Op. at 10-11 (paragraph breaks added).

When the trial resumed the next day, the defense did not call Dr. Reynolds, Trooper Corrigan, or any rebuttal blood expert. *See* N.T. at 1136.

On February 12, 2016, the jury found Appellant guilty of Third-Degree Murder and Tampering with/Fabricating Physical Evidence. The court sentenced her on March 22, 2016, to a term of 20 to 40 years' incarceration for the Third-Degree Murder conviction, and a consecutive term of 3 to 6 months' incarceration for the Tampering with/Fabricating Physical Evidence conviction.[5]

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

**Issues**

In her Brief, Appellant presents the following "Statement of Questions Involved:"

> (A) Whether the Commonwealth, either willfully or inadvertently, suppressed and/or failed to disclose evidence favorable to the defense, (either because it was exculpatory or material and relevant for impeachment purposes), that the procedure(s) and testing employed, and the conclusions derived therefrom, by its forensic expert Trooper John Corrigan (which were also relied upon by other Commonwealth witnesses) were disputed by a renown forensic expert (Mark Reynolds, PhD.), thus violating ***Brady v. Maryland***, and its progeny which was prejudicial to the

---

[5] The court also ordered a consecutive term of probation and restitution.

defense and denied the defendant due Process of Law and a fair trial?

(B)     Whether the Trial Court erred and/or abused its discretion by denying the defense Motion for Mistrial based upon the **Brady** violation set forth in Paragraph (A) herein as the defendant was denied the opportunity to retain expert Reynolds in this case prior to trial, and unable at trial to call forensic expert Mark Reynolds, PhD., to refute the Commonwealth's case as he was located in Australia and unable to examine and review the physical and photographic evidence produced by the Commonwealth within the time constraints of the ongoing trial, thus causing prejudice to the defendant and denying her Due Process of Law and a fair trial?

Appellant's Brief at 4 (verbatim).

## **Standard of Review**

Appellant argues that the trial court erred in denying her Motion for a Mistrial. Our standard of review of a court's denial of a motion for mistrial is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

**Commonwealth v. Tejeda**, 834 A.2d 619, 623 (Pa. Super. 2003) (internal citations and footnote omitted).

### *Brady* Violation

The basis for Appellant's Motion for a Mistrial was an assertion that the Commonwealth committed a ***Brady*** violation because it withheld impeachment evidence, *i.e.*, evidence that its expert's report had been criticized by an expert instructor at a training conference. Appellant's Brief at 9. The following principles guide our review of this issue.

***Brady*** provides that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. ***See also*** Pa.R.Crim.P. 573(B)(1)(a) (pertaining to the mandatory disclosure of evidence favorable to the accused which is material to guilt or to punishment of the accused, and which is within the possession or control of the prosecutor).

Impeachment evidence falls within the parameters of ***Brady***. ***United States v. Bagley***, 473 U.S. 667 (1985). As the United States Supreme Court has stated, "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general [***Brady***] rule." ***Giglio v. United States***, 405 U.S. 150, 154 (1972) (quoting ***Napue v. Illinois***, 360 U.S. 264, 269 (1959)). "Thus, at the time of [A]ppellant's trial, the Commonwealth was required to provide [A]ppellant with information in its possession [that]

impacted upon the credibility of its witnesses." *Commonwealth v. Galloway*, 640 A.2d 454, 457 (Pa. Super. 1994).

It is without doubt that the information upon which Appellant bases her *Brady* violation claim "impacted upon the credibility" of the Commonwealth's expert witness. *Id*. However, to establish a *Brady* violation, an appellant must prove three elements: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013). In addition, "[t]he withheld evidence must have been in the exclusive control of the prosecution at the time of trial. No *Brady* violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question. Similarly, no violation occurs when the evidence was available to the defense from a non-governmental source." *Commonwealth v. Haskins,* 60 A.3d 538, 547 (Pa. Super. 2012).

In order to demonstrate prejudice, "the evidence suppressed must have been material to guilt or punishment." *Commonwealth v. Gibson*, 951 A.2d 1110, 1126 (Pa. 2008).

> Evidence is material under *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the trial could have been different. *Kyles v. Whitley,* 514 U.S. 419, 433–34[ ] (1995). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." *Commonwealth v. McGill,* [ ] 832 A.2d 1014, 1019 ([Pa.] 2003) (quoting *U.S. v.*

- 8 -

> *Agurs*, 427 U.S. 97, 109–10[ ] (1976)). The relevant inquiry is "not whether the defendant would more likely than not have received a different verdict with the evidence, but **whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."** ***Kyles***, 514 U.S. at 434 [ ] [(emphasis added)]. To prove materiality where the undisclosed evidence affects a witness' credibility, a defendant "must demonstrate that the reliability of the witness may well be determinative of the defendant's guilt or innocence." ***Commonwealth v. Johnson***, 556 Pa. 216, 727 A.2d 1089, 1094 (1999).

***Commonwealth v. Haskins,*** 60 A.3d 538, 547 (Pa. Super. 2012) (duplicative citations omitted).

In the instant case, while the evidence at issue was favorable to Appellant in that it provided a basis to impeach the credibility of the Commonwealth's expert witness, we cannot conclude that had the evidence been disclosed, there is a reasonable probability that "the result of the trial would have been different." ***Kyles***, ***supra*** at 433 (citation omitted). As the trial court observed:

> The jury verdict was based on a record replete with a large amount of evidence, both direct and circumstantial presented to the jury, including multiple statements and various confessions of [Appellant]. The multiple and often contradictory statements and confessions of [Appellant] affirmed many of the conclusions reached by Trooper Corrigan in his expert report. [Appellant] confessed that the victim was first face down on the couch and then she moved him to the floor and then put his head on the rung of the chair. This is consistent with the opinion of Trooper Corrigan.

Trial Ct. Op, filed 3/31/17, at 13.[6]

Because Appellant cannot show that there is a reasonable probability the outcome of the trial would have been different or that she received an unfair trial, her **Brady** claim fails.

### Mistrial

Even if there had been a **Brady** violation, we would conclude that the trial court properly exercised its discretion in denying Appellant's Motion for a Mistrial.

Our rules provide that a court may declare a mistrial "only for reasons of manifest necessity." Pa.R.Crim.P. 605. Further, with respect to **Brady** violations, the Pennsylvania Supreme Court has concluded:

> where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal.

**Commonwealth v. Burke**, 781 A.2d 1136, 1146 (Pa. 2001).

---

[6] The trial court stated, without citation to the record, that the Commonwealth "attested that no one in the Luzerne County District Attorney's Office knew or should have known that the fact pattern was used in a mock trial by an investigator at the seminar." Trial Ct. Op., filed March 31, 2017, at 14. In **Kyles**, the United States Supreme Court stated that the "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." **Kyles v. Whitney**, 514 U.S. 419, 437 (1995). As such, under **Brady**, the state is held accountable for evidence known by the police, even if the information is unknown by the prosecutor. **Id.** at 438.

Thus, the trial court "may order [the Commonwealth] to permit discovery or inspection, may grant a continuance, or may prohibit [the Commonwealth] from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E).

In the instant case, the trial court provided Appellant's counsel with an opportunity to bring the newly-discovered impeachment evidence to the jury's attention. As the court noted:

> [Appellant] had the opportunity to recall Trooper Corrigan in her case in chief in order to reexamine him and question him on Dr. Reynolds's concerns with his report. The [c]ourt also gave [Appellant] the opportunity to present Dr. Reynolds to be qualified as an expert in the matter and present him as a witness. [Appellant] was given ample opportunity to retain Dr. Reynolds through a formal agreement and present him as a witness. The court offered a recess of over five days, including the weekend, to prepare the expert. Dr. Reynolds was in the possession of Trooper Corrigan's report, other documents regarding the trial and transcribed testimony from the trial at the time of the hearing on the mistrial. Dr. Reynolds attested that once he was formally retained he would make arrangements.
>
> [Appellant] chose not to recall Trooper Corrigan or Dr. Reynolds.
>
> Therefore, in light of the [c]ourt's analysis of [Appellant's] challenge in conjunction with the [c]ourt providing [Appellant] with the opportunity to present Dr. Reynolds as an expert witness, the [c]ourt's denial of the motion for a mistrial must stand.

Trial Ct. Op. at 16.

We agree with the trial court's assessment and conclusion. Our review of the trial transcript, including the Notes of Testimony from the hearing on Appellant's Motion for a Mistrial, indicates that the court did not abuse its

- 11 -

discretion in declining to declare a mistrial. Accordingly, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

Judge Strassburger joins the memorandum.

Judge Olson concurs in result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/25/18