J-S27008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HAKIM ABDUL WAKEEL | : | |
| | : | |
| Appellant | : | No. 1772 EDA 2016 |

Appeal from the PCRA Order May 3, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0003579-2008

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED JUNE 09, 2017**

Appellant, Hakim Abdul Wakeel, appeals from the order entered in the Northampton County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court opinions fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.

Appellant raises one issue for our review:

> DID THE PCRA COURT ERR BY CONCLUDING THAT THE
> CLAIM UNDERLYING [APPELLANT]'S ASSERTION OF PRIOR

---

[1] 42 Pa.C.S.A. § 9541-9546.

---

*Retired Senior Judge assigned to the Superior Court.

COUNSELS' INEFFECTIVENESS, *I.E.*, THE **BRADY**[2] CLAIM, WAS WITHOUT ARGUABLE MERIT?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. **Commonwealth v. Abu-Jamal**, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). Where the record supports the PCRA court's credibility resolutions, they are binding on this Court. **Id.**

The law presumes counsel has rendered effective assistance. **Commonwealth v. Gonzalez**, 858 A.2d 1219, 1222 (Pa.Super. 2004), *appeal denied*, 582 Pa. 695, 871 A.2d 189 (2005). To prevail on a claim of

_____

[2] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel, which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must show: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for counsel's errors and omissions, there is a reasonable probability the outcome of the proceedings would have been different. *Id.* "The petitioner bears the burden of proving all three prongs of the test." *Id.* "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the…test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." *Commonwealth v. Steele*, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Paula A. Roscioli, we conclude Appellant's issue merits no relief. The PCRA court's opinions comprehensively discuss and properly dispose of the question presented. (*See* PCRA Court Opinion, filed July 28, 2016, at 1-3; PCRA Court Opinion, filed May 3, 2016, at 4-18) (finding: Julio Lopez testified at Appellant's trial that he participated in burglary with Appellant and identified

Appellant as one of perpetrators; Lopez denied Commonwealth had promised him consideration in Lopez's then-pending criminal case in exchange for his testimony; at Appellant's initial PCRA hearing, Lopez also denied Commonwealth had made him promises before he testified at Appellant's trial; Lopez disavowed written statement of private investigator, Sharon Williams, in which Lopez said counsel had told him Commonwealth had agreed to seek lesser sentence against him if he testified against Appellant; Lopez's counsel also testified at Appellant's initial PCRA hearing, and stated Commonwealth did not offer plea negotiation before Lopez testified against Appellant; at most recent PCRA hearing, Lopez recanted his prior testimony; Lopez said Commonwealth had told him he could plead to charges to receive specific sentence if he testified; Lopez then adopted Ms. Williams' written statement; Lopez's testimony at most recent PCRA hearing was incredible; record belies Appellant's assertion that Lopez reached agreement with Commonwealth before he testified at Appellant's trial; additionally, Ms. Williams' statement is unreliable because she embellished her previous role in Pennsylvania State Police and lacked understanding of facts of case when she interviewed Lopez; even if PCRA court did credit Lopez's recantation testimony, Appellant was not entitled to PCRA relief; Lopez's testimony at Appellant's trial was not crucial to Appellant's convictions, given significant other evidence to support Appellant's convictions; Lopez did not recant his testimony regarding events leading up

to incident and his identification of Appellant as one of perpetrators; also, Appellant challenged at trial Lopez's credibility when he elicited testimony from Lopez to demonstrate Lopez also faced charges arising from same incident; accordingly, Appellant's **Brady** violation claim lacks arguable merit and there is no reasonable probability that outcome of Appellant's trial would have differed if jury knew that Commonwealth had made promise to Lopez in exchange for his testimony against Appellant; PCRA court's statement in its November 12, 2013 opinion concerning potential materiality of Lopez's recantation testimony as impeachment evidence does not represent law of case; PCRA court did not state Lopez's identification of Appellant at trial was material to Appellant's conviction, but that existence of promise/understanding between Commonwealth and Lopez would be material evidence subject to disclosure under **Brady**; court had previously determined that Lopez's identification testimony concerning Appellant was not crucial to outcome of trial because there was ample other evidence against Appellant).  The record supports the PCRA court's rationale. Accordingly, we affirm on the basis of the PCRA court's opinions.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017

- 5 -

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION**



COMMONWEALTH OF PENNSYLVANIA    :
                                :

     v.                                  :     No. CP-48-CR-3579-2008

                                   :

HAKIM A. WAKEEL,                  :

                                   :

              Defendant.        :

### STATEMENT PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

**AND NOW**, this 28th day of July 2016, we hereby issue the following Statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a):

On June 8, 2016, this Court received a timely Notice of Appeal from our May 3, 2016 Order of Court denying Defendant's amended PCRA petition, said Notice having been filed on May 27, 2016. On June 9, 2016, we issued an Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), directing Defendant to file of record and serve upon the undersigned a concise statement of the errors complained of on appeal no later than twenty-one (21) days from the date of said Order. Counsel for Defendant delivered a timely statement of such perceived errors on June 28, 2016.

In his statement, Defendant raises two errors of which he complains. First, Defendant contends that this Court erred in concluding that the testimony offered at his most recent PCRA hearing by Julio Lopez was not credible. Our reasons for concluding that Lopez was not credible are thoroughly set forth in our May 3, 2016 Opinion, and accordingly no further statement on this point is required.

Second, Defendant contends that we erred in concluding that Lopez's trial testimony was not material for the purpose of establishing a *Brady* violation, because (a) a determination of the materiality of said testimony was the law of the case, and (b) Lopez's testimony was "crucial to the Commonwealth's case," because the other evidence linking Defendant to the crimes at issue was "underwhelming." With respect to Defendant's argument regarding the law of the case, we can only surmise that Defendant refers to the following statement in our November 12, 2013 Opinion addressing his prior PCRA petition: "[A]ny promise or understanding between the Commonwealth and Lopez with respect to Lopez's testimony against this Defendant would be material impeachment evidence subject to disclosure under *Brady* and its progeny, given that Lopez was a key fact witness for the Commonwealth[.]" Contrary to Defendant's argument on the present occasion, this statement does not represent the law of the case with respect to the materiality of Lopez's trial testimony. Defendant conflates our statements regarding impeachment evidence and trial testimony identifying Defendant. We did not state in our 2013 Opinion that Lopez's identification of Defendant at trial was material to his conviction, but rather that the existence of a promise or understanding between the Commonwealth and Lopez *would be* material evidence subject to *Brady* disclosure requirements. Importantly, we have found, both in 2013 and in 2016, that such impeachment evidence *does not and did not* exist. Furthermore, as we discussed at length in our May 3, 2016 Opinion, Lopez's identification testimony with respect to Defendant at trial was not crucial to the outcome of the trial, as

there was ample other evidence connecting Defendant to the crimes at issue, even in the absence of any identification testimony by Lopez.

In all other respects, Defendant's assertions of error are fully addressed in our May 3, 2016 Opinion, and no further statement on our part is required at the present time.

BY THE COURT:

_Paula A. Roscioli_

**PAULA A. ROSCIOLI, J.**

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CRIMINAL DIVISION**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** : | |
| : | **No. CP-48-CR-2579-2008** |
| **v.** : | |
| : | |
| **HAKIM ABDUL WAKEEL,** : | |
| : | |
| **Defendant.** : | |

## OPINION OF THE COURT

This matter is presently before the Court for disposition of Defendant Hakim Abdul Wakeel's amended petition for post-conviction collateral relief, filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* Defendant Hakim A. Wakeel (Defendant) was convicted on May 18, 2009 of four counts of robbery, two counts of aggravated assault, one count of burglary, four counts of recklessly endangering another person, four counts of unlawful restraint, five counts of terroristic threats, two counts of simple assault, and related conspiracy charges, all stemming from an armed robbery at the home of James Garcia (Garcia) in Bethlehem, Pennsylvania in which he participated on July 26, 2007. Daniel Rivera, a friend of Garcia, was killed during the course of the robbery, but Defendant was acquitted of all homicide charges. Three other individuals were also charged in connection with the robbery – Angel Echevarria, Julio Lopez and Susan Stohl. Another male, whose identity has not been determined by law enforcement, was also involved in the robbery.

Defendant was originally sentenced on June 12, 2009, and, following an appeal of that sentence to the Superior Court, was resentenced on February 23, 2011. Thereafter, he filed another direct appeal, and the Superior Court affirmed his second sentence on March 30, 2012. On April 10, 2013, Defendant timely filed his original PCRA petition, which this Court ultimately denied on November 12, 2013. Prior to this Court's denial of his petition, Wakeel requested to proceed *pro se*, and to file an amended brief. His request to file an amended brief was denied by this Court, as his appointed counsel had already filed a brief prior to being withdrawn at Defendant's request. On appeal, the Superior Court remanded the matter with instructions to conduct a hearing in accordance with *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), to ensure that Defendant's request to proceed *pro se* was knowing and intelligent, and to permit Defendant to file an amended petition raising a claim of his PCRA counsel's ineffectiveness.

On May 27, 2015, Defendant advised this Court by way of correspondence that he did not wish to attend a *Grazier* hearing because he had retained private counsel. On July 6, 2015, present counsel for Defendant entered his appearance, rendering a *Grazier* hearing unnecessary. Accordingly, on July 13, 2015, this Court issued an Order formally granting Defendant leave to file an amended PCRA petition, within 60 days thereafter. Defendant's amended petition was filed September 11, 2015, and served upon the undersigned on September 29, 2015. On October 30, 2015, an issue-framing

Page 2 of 18

conference was held, at which time counsel for Defendant requested to file a discovery motion, seeking discovery of correspondence sent to either this Court or the Northampton County Office of the District Attorney by Julio Lopez (Lopez) concerning Lopez's contention that, following his plea to third degree murder in connection with the death of Daniel Rivera, he did not receive the sentence he had been promised in exchange for his cooperation as the Commonwealth's witness in this case and in the prosecution of Angel Echevarria. The discovery motion was filed November 9, 2015, and denied on November 18, 2015, on the grounds that no such correspondence exists. A hearing on Defendant's amended PCRA petition was scheduled for January 11, 2016, and later continued to February 11, 2016 due to the unavailability of Defendant's counsel on the January date. The hearing in fact took place on February 11, 2016, and a briefing schedule was set.[1] Both Defendant and the Commonwealth have now filed briefs in support of their respective positions, and the matter is now ready for disposition by this Court.

In his amended PCRA petition, Defendant contends that both Attorney David Mischak, who represented him at trial and on direct appeal, and Attorney Brian Monahan, who represented him in connection with his original PCRA

---

[1] At the close of the hearing, Defendant's counsel neglected to move his two exhibits into evidence, but later requested, via a Motion to Re-Open Record, that the PCRA hearing record be re-opened for the limited purpose of formally admitting those two exhibits. The Commonwealth has not opposed said motion and, accordingly, we have entered an Order admitting those exhibits, as we would have if counsel had moved their admission at the hearing. We have not, however, admitted Defendant's proposed PCRA Exhibit 3, alleged to be a copy of correspondence sent by Julio Lopez to this Court in January 2011, as such exhibit contains hearsay that was not introduced at the time of the hearing and about which Lopez has not been cross-examined.

petition, "were ineffective for failing to properly preserve, present, and argue a meritorious *Brady* claim." (Def. Am. Pet., ¶29). *Brady v. Maryland*, 373 U.S. 83 (1963). More specifically, Defendant contends that, following Lopez's guilty plea in November 2010 and sentencing in January 2011, Attorney Mischak should have reviewed the transcripts thereof and filed a motion pursuant to Pa.R.C.P. 720(c), relating to after-discovered evidence, on the basis of statements made in those proceedings that Defendant contends form a basis for his *Brady* claim. Furthermore, he alleges that Attorney Monahan was ineffective for (a) failing to allege that Attorney Mischak was ineffective, and (b) failing to ensure the attendance of witness Sharon Williams at his first PCRA hearing in order to impeach the testimony given by Lopez on that occasion, in support of Defendant's *Brady* claim.

The heart of the matter is Defendant's contention that the Commonwealth violated the requirements of *Brady* by failing to disclose to Defendant that there was an understanding between Lopez and the Commonwealth such that Lopez would receive favorable treatment in exchange for his testimony against Defendant, and that Defendant is entitled to a new trial as a result of this violation. Defendant bears the burden to prove this constitutional violation by a preponderance of the evidence. 42 Pa.C.S. § 9543(a). Having considered the entire record, we find that Defendant's *Brady* violation claim lacks arguable merit, and that there is not a reasonable probability that, but for the omissions of Attorneys Mischak and Monahan, the result of Defendant's trial would have

been different, and accordingly Defendant's amended PCRA petition must be denied. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

As Defendant accurately argues, *Brady* requires the disclosure to Defendant of all exculpatory material, including evidence of an impeachment nature. *Commonwealth v. Lesko*, 15 A.3d 345 (Pa. 2011). In addition to any outright promise by the Commonwealth for leniency in consideration for a witness's favorable testimony, "[a]ny implication, promise, or understanding that the government would extend leniency in exchange for a witness's testimony is relevant to the witness's credibility" and therefore subject to disclosure by the Commonwealth. *Commonwealth v. Strong*, 761 A.2d 1167, 1171 (Pa. 2000). This is because a "jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A violation of a defendant's constitutional rights under *Brady* is proven when a defendant proves each of the following: "(1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment." *Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013). While evidence of the type Defendant is suggesting would be impeachment evidence favorable to him, he has failed to prove either that the Commonwealth

concealed such evidence, or that, even if said evidence did exist, he was prejudiced by its concealment.

The alleged impeachment evidence at issue herein consists of testimony and circumstantial evidence that Defendant contends proves that Lopez was offered a "deal" in exchange for his cooperation with the Commonwealth by testifying against Defendant. At trial, Lopez denied that he had been promised any consideration for his testimony against Defendant. (N.T. 5/14/09, pp.28-32, 63). He continued to deny the existence of any promises at Defendant's first PCRA hearing, testifying that while he was hoping for a sentence of 10-20 years, the Commonwealth had not promised him anything or negotiated a plea prior to his trial testimony. (N.T. 9/24/13, pp.41-49). This testimony by Lopez was supported by the testimony of his attorney, Erv McLain, Esq., who testified at the PCRA hearing, "I can tell you unequivocally when I approached the DA's office prior they said no such luck," and "Quite literally there was no plea negotiation." (N.T. 9/24/13, pp.34, 35).

At the most recent PCRA hearing, Lopez recanted his prior testimony on this point, contending that the Commonwealth had told him, "if you help us, we will help you," and told him that he would be allowed to plea to charges which would give him a 10-20 year sentence. (N.T. 2/11/16, pp.60-69.) He claims that Attorney McLain told him and his family that he would make sure that Lopez did not get more than 10-12 years as his minimum sentence. (N.T. 2/11/16, p.67). Lopez claims now that he lied on each of the prior occasions on

which he testified that there was no deal or understanding with the Commonwealth prior to his trial testimony, and though he does not recall his specific conversations with ADA Richard Pepper, he was promised a lesser sentence than what he received. (N.T. 2/11/16, pp.72, 78). In his most recent testimony, Lopez also adopted the written statement of private investigator Sharon Williams, signed by him on April 18, 2013, wherein he contended that his counsel, Mr. McLain, "told me that the Commonwealth was not going to give me a lot of time." (PCRA Ex.2). He further contended therein that he directed correspondence to Mr. McLain and this Court following his sentencing, wherein he lamented the fact that he did not receive the consideration he had been promised for his trial testimony. We note, as we have previously, that no such correspondence was received by this Court. Lopez had previously disavowed the writing of Sharon William at Defendant's first PCRA hearing on September 24, 2013, claiming that Ms. Williams had fabricated portions of the written statement. We must note that, while Lopez is recanting his prior testimony regarding this impeachment matter, he has never recanted his core testimony with respect to the series of events leading to the July 26, 2007 robbery and his identification of Defendant as one of the perpetrators.

We must note that recantation testimony, as we have here, is "extremely unreliable." *Commonwealth v. Floyd*, 484 A.2d 365, 369 (Pa. 1984). "There is no less reliable form of proof, especially when it involves an admission of perjury." *Commonwealth v. Coleman*, 264 A.2d 649 (Pa. 1970). We must

"assess the credibility and significance of the recantation in light of the evidence as a whole." *Commonwealth v. D'Amato*, 856 A.2d 806 (Pa. 2004). There are several indicia of unreliability with respect to Lopez's recantation testimony in this case. First, his present testimony is inconsistent with his vehement testimony to the contrary on numerous prior occasions. He testified at Defendant's trial on cross examination that he had no deal with the Commonwealth, and that there was no understanding that he would get "a big break" after testifying against Defendant. (N.T. 5/12/09, pp.28-29, 32). He testified consistently at the trial of co-defendant Angel Echevarria, in which he also testified on behalf of the Commonwealth. (*Commonwealth v. Echevarria*, CP-48-CR-2008-1248, N.T. 9/14/10, pp.67-70). Furthermore, his present testimony is inconsistent with his testimony at the prior PCRA hearing in 2013, at which time he continued to deny that any promises had been made to him, or any understanding reached with respect to the disposition of his case. (N.T. 9/24/13, pp.42-45). Having had an opportunity to hear Lopez's testimony on all of these prior occasions, as well as his present testimony, and to observe his demeanor on each of those occasions, we have concluded that Lopez is not being truthful in his present testimony. While we can only speculate as to Lopez's motivation to fabricate his present testimony, there are clearly potential motives, including his anger that he did not receive the sentence that he subjectively expected as consideration for his cooperation, or the fact that he was violently assaulted and stabbed in prison by fellow inmates who regarded

Page 8 of 18

him as a "snitch" as a result of his prior testimony. He stated at the most recent hearing:

> I didn't give up free information, got beat up, stabbed, almost killed, for free information. It wasn't free at the end of the day, I mean[, w]hen you snitch on somebody, there's consequences behind that. At the end of the day, I didn't get my face slashed, you know, and stabbed and all that kind of stuff, for free information. At the end of the day, it wasn't free. I mean, I didn't expect something but they didn't give me nothing and they even spoke with my lawyer and my lawyer even told my family.

(N.T. 2/11/16, p.66).

In addition to the conflict between Lopez's present testimony and his past testimony, we must resolve the conflict between his present testimony and the past testimony of his plea counsel, Attorney Erv McLain, as well as the statements of the prosecuting attorney, ADA Richard Pepper. As we summarized in our prior Opinion of November 12, 2013:

> Attorney McLain testified that there was no plea agreement for Lopez whatsoever prior to his testimony against the Defendant. (N.T. 9/24/13, p.32). In fact, he testified, the prosecutor laughed at him when he broached the subject; the Commonwealth already had a great deal of evidence against Lopez, in the form of his own admissions, which he had given to the investigating detective prior to retaining Attorney McLain. (N.T. 9/24/13, pp.33-34, 38). McLain said that he told Lopez that he was at the mercy of the Commonwealth, and that while McLain hoped the Commonwealth would offer Lopez a negotiated plea as a result of his cooperation, there was no such promise made. (N.T. 9/24/13, pp.36-37).

Furthermore, Attorney McLain indicated to the Court at the time of Lopez's guilty plea that no agreement had been reached in connection with his cooperation prior to his testimony against Defendant and Echevarria. (*Commonwealth v. Lopez*, CP-48-CR-2008-792, N.T. 11/19/10, p.3). Attorney

Pepper indicated for the Commonwealth that this was correct. *Id*. Were we to believe Lopez's present version of events, would be required to wholly disregard the testimony of these two officers of the Court and find that they had both perjured themselves.

While Lopez's testimony on the present occasion is supported by the testimony of Sharon Williams, her testimony that Lopez's statements were consistent with his present testimony is of no value if we find his present testimony not to be credible, as we have done. Furthermore, we found Ms. Williams herself to be less than reliable, given her embellishment of her role as an employee of the Pennsylvania State Police, and her apparent lack of respect for the authority of the Court, as she testified that she had received a subpoena to testify at Defendant's first PCRA hearing and failed to appear because she had not been paid. (N.T. 2/11/16, pp.41, 46, 48-50). We further find Ms. Williams' testimony to be unreliable given that she clearly lacked an understanding of the facts of the case when interviewing Lopez, as she was evidently of the impression that Lopez had pled to first degree murder and expected to withdraw that plea in exchange for testimony against Defendant. (PCRA Ex.2). The record in Lopez's case clearly shows that such a plea never took place.

Defendant argues that additional evidence of record supports his contention that Lopez's previous claims that he had no "deal" with the Commonwealth were false. In his brief, he points to the following: (a) Attorney

Mischak testified on February 11, 2016 that, prior to trial, Defendant was offered consideration for testifying against others involved in the robbery; (b) Lopez was incarcerated for approximately three years before pleading guilty; and (c) statements were made by the Court and counsel at Lopez's plea to the effect that Lopez had cooperated in the prosecution of Defendant and Echevarria and was being offered some consideration for that fact. (N.T. 2/11/16, pp.26-28; *Commonwealth v. Lopez*, CP-48-CR-2008-792, N.T. 11/19/10, pp.2-4). We disagree that these factors require the conclusion that the Commonwealth withheld impeachment evidence regarding Lopez.

While it is true that Lopez was offered consideration for his assistance in the prosecution of Defendant and Echevarria, the record belies Defendant's contention that an agreement was made prior to his testimony. To the contrary, all that this evidence shows is that the Commonwealth had significant evidence against Lopez and it used that fact to its advantage by waiting to prosecute him until after his testimony, and that it later chose to give him consideration for this helpful testimony, in lieu of proceeding to a third trial. Unlike Defendant, Lopez gave numerous incriminating statements to police prior to retaining Mr. McLain, thereby making it wholly unnecessary for the Commonwealth to negotiate a plea with Lopez to gain his cooperation. The fact that the Commonwealth ultimately elected to permit Lopez to plea to a lesser offense and receive a sentence that will see him released from prison well into his retirement years is not evidence that there were negotiations prior to his

testimony. As Attorney McLain testified, Lopez found himself at the mercy of the Commonwealth, given their evidence against him, and he evidently elected to cooperate in hopes of ingratiating himself with ADA Pepper.

At best, the record illustrates that Lopez's attorney instructed him to cooperate with the Commonwealth, that Lopez had an unreasonable expectation of what that cooperation would garner him, and that he is dissatisfied that those expectations did not come to fruition. In the absence of any credible testimony that there was any understanding between Lopez and the Commonwealth, we are left with nothing more than Defendant's supposition that a promise was made to Lopez in exchange for his testimony, which supposition alone cannot form the basis for a valid *Brady* claim. *Commonwealth v. Champney*, 832 A.2d 403 (Pa. 2003).

Even if we were to credit Lopez's present testimony, we would not find that it forms a proper basis upon which to grant Defendant PCRA relief. Not only must impeachment evidence have been concealed in order to entitle a defendant to a new trial, that undisclosed evidence must have been constitutionally material. "[I]mpeachment evidence is material, and thus subject to obligatory disclosure, if there is a reasonable probability that had it been disclosed the outcome of the proceedings would have been different." *Strong*, supra, at 1174. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial." *United States v. Bagley*, 473 U.S. 667, 683 (1985). We must make this assessment in consideration of the

totality of the circumstances of the evidence offered at Defendant's trial. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome does not establish materiality in the constitutional sense." *Commonwealth v. McGill*, 832 A.2d 1014, 1019 (Pa. 2003). The relevant inquiry is "whether in [the] absence [of the impeachment evidence] he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). We note that Defendant has failed to address this issue in his brief, concluding his arguments after contending that the record reflects that there was an understanding between Lopez and the Commonwealth of which *Brady* required disclosure.

Considering all of the evidence offered at Defendant's trial, we cannot come to the conclusion that there is a reasonable probability that the outcome of the trial would have been different if the alleged impeachment evidence had been presented to the jury. While Lopez was an important witness in identifying Defendant as one of the perpetrators of the July 26, 2007 robbery, his testimony was not crucial to Defendant's conviction, as there was a significant amount of other evidence to support it. See *Commonwealth v. Buehl*, 658 A.2d 771 (Pa. 1995) (prosecution's failure to reveal potential bias of witnesses who had pending criminal charges did not entitle defendant to a new trial where there was sufficient other evidence to support the conviction, outside of those witnesses' testimony). Cf. *Giglio v. U.S.*, 405 U.S. 150, 154 (1972) (defendant

Page 13 of 18

entitled to new trial where evidence of an agreement not to prosecute had been withheld regarding the state's witness without whom "there could have been no indictment and no evidence to carry the case to the jury"); *Commonwealth v. Galloway*, 640 A.2d 454, 459 (Pa. Super. 1994) (reliability of witness was determinate of verdict, as she "was the only witness to state that she saw [the defendant] possess and shoot a gun" and thus the defendant was entitled to a new trial where impeachment evidence regarding that witness had been withheld). Moreover, his credibility was tested when the jury learned that he was facing charges identical to those that Defendant faced. Lopez was examined on that occasion as follows on direct examination:

Q: Mr. Lopez, you're currently in prison[,] correct?
A: Yes.
Q: You're charged with this homicide[,] are you not?
A: Yes, I am.
Q: Along with a number of other offenses, robbery and aggravated assault and so on[,] correct?
A: Yes, I am, sir.
Q: Your lawyer is in the courtroom. Is he not?
A: Yes.
Q: Have you made any deals with anybody about what you're going to get in your case in exchange for your testimony?
A: No. I'm charged the same.
Q: My office offered you absolutely nothing?
A: No, sir.
Q: Mr. McLain, your lawyer, distinguished lawyer, been around quite some time, he's gotten nothing for you[,] has he?
A: No.
Q: No deals, nothing?
A: Nothing.
Q: You're still facing life imprisonment on this charge?
A: Yes.

(N.T. 5/14/09, pp.28-29). Lopez was then cross-examined as follows:

Q: You realize under oath that by admitting to that plan, you're admitting to the charge of second degree murder?

A: Yes.

Q: And you're aware that second degree murder carries a life sentence?

A: Yes.

Q: And you're telling the ladies and gentlemen under oath that despite the fact that you're admitting to a crime that carries a mandatory life sentence, you have no deal with the Commonwealth?

A: I don't.

Q: No understanding that they're going to cut you a big break after you're testifying in this case?

A: I don't.

Q: That's something you never brought up with your seasoned attorney whatsoever?

A: No. He told me to tell the truth. That's it.

Q: And he told you by testifying here in this case that you're not going to get that life sentence. You're going to get something substantially less?

A: He never told me.

Q: You told your cell mate not too long ago that you're expecting to get as low as 10 years on this case, didn't you?

A: No, never.

(N.T. 5/14/09, pp.31-32). Thus, the jury was well aware that Lopez was facing substantial charges in connection with the armed robbery, and were able to use that information in evaluating whether he had any bias or interest that would flavor his testimony, as they did when evaluating the testimony of all of the witnesses presented.

In identifying Defendant at trial, Lopez testified that he had arranged for a man he knew as Chucho, from Philadelphia, to assemble some other individuals to execute the robbery from Garcia's home. He testified that he had never spoken to Defendant before, but that he met him on the night in question

prior to the robbery, and had a good opportunity to view the face of the Defendant, who was riding in the front passenger seat of a van, while he discussed the evening's plans with Chucho, Defendant, and the third individual whose identity remains unknown. (N.T. 5/14/09, pp.15-19.) After this discussion took place, the four men assumed their respective positions around the Garcia property and waited for a lengthy period before the robbery took place, during which time Lopez was not with Defendant. (N.T. 5/14/09, pp.19-21). Lopez observed Defendant initiating the robbery from afar while he hid in the tree line, as well as fleeing from the Garcia home afterwards, and had no contact with him after the robbery. (N.T. 5/14/09, pp.14, 21-24). While this testimony was important in identifying Defendant at trial, it was not essential to the Commonwealth's case, as there was ample other evidence linking him to the crimes charged.

In addition to the identification testimony by Lopez, the Commonwealth offered the testimony of Garcia, one of the victims in the case. Garcia identified Defendant at trial as one of the perpetrators, testifying that he had had no difficulty in viewing the faces of the two black men with guns who approached him on the pool deck and later escorted him into his home and committed the crimes detailed above. (N.T. 5/12/09, pp.29-34). He further testified that he had identified Defendant in a photo lineup during a police interview following the robbery. (N.T. 5/12/09, p.47)

Perhaps the most important evidence linking Defendant to the crimes in this case was not the testimonial evidence from Lopez and Garcia, but evidence relating to the use of Defendant's cellular phone. In questioning Detective Mark DiLuzio, the lead investigator in the case, the Commonwealth presented evidence of the records of a cell phone that was assigned to and paid for by Defendant. (N.T. 5/14/09, p.132). The evidence presented, through testimony and maps, showed that said phone connected with cell towers in a route from Philadelphia, where Defendant resided, to Bethlehem, where the robbery took place, in the hours prior to the robbery; that the phone connected with cell towers in Bethlehem prior to and around the time of the robbery; and that it connected with cell towers travelling back to Philadelphia from Bethlehem just after the robbery took place. (N.T. 5/14/09, pp.133-147). The phone was never reported stolen. (N.T. 5/14/09, pp.134-135). Moreover, the records indicated that said phone exchanged numerous calls with Lopez's phone in the days leading up to the robbery. (N.T. 5/14/09, pp.137-140).

As an additional matter of circumstantial evidence, one of the female victims of the robbery told police that one of the black male perpetrators had been wearing stained Timberland boots and, during the course of their investigation of this matter, police recovered a pair of stained Timberland boots from Defendant's home, which tested positive for human blood. (N.T. 5/14/09, pp.85-89). The amount of blood on the boot was insufficient for DNA analysis, but was determined to be human. (N.T. 5/14/09, p.88). In addition, police

recovered some old currency from a safe at Defendant's home. (N.T. 5/14/09, p.170). While Garcia was not able to identify any of those items as being his, the items were consistent with items that Garcia had reported as stolen following the robbery. (N.T. 5/14/09, p.171).

Taking all of this evidence together, we cannot conclude that even the complete absence of Lopez's identification testimony would make a different verdict in this case reasonably probable. Where such a reasonable probability does not exist, a defendant is not entitled to relief on *Brady* grounds. See, e.g., *Bagley*, supra. Accordingly, we find that Defendant's amended PCRA petition must be denied.

**WHEREFORE**, we enter the following: